Debbie P. Kirkpatrick, Esq. (SBN 207112)
Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
dkirkpatrick@sessions-law.biz,
drichard@sessions-law.biz

Michael D. Slodov (Ohio SCR# 0051678)
*Admitted Pro Hac Vice*
Sessions, Fishman, Nathan & Israel, L.L.C,
15 E. Summit St.
Chagrin Falls, Ohio 44022
Tel: 440.318.1073
Fax: 216.359.0049
mslodov@sessions-law.biz

Attorneys for Defendant NCO Financial Systems, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY MOLNAR, et al., | Case No.  13-CV-0131-BAS-JLB |
| Plaintiffs, | |
| vs. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT NCO FINANCIAL SYSTEMS, INC.'S MOTION TO STAY** |
| NCO FINANCIAL SYSTEMS, INC., | |
| Defendant. | **Date:  October 13, 2014**<br>**Time: 10:30 a.m.**<br>**Courtroom: 4B**<br>**Judge: CYNTHIA A. BASHANT** |

## I. Introduction

Plaintiffs oppose NCO's motion to stay under the primary jurisdiction doctrine on six grounds, addressed in the order of appearance below. In response to Plaintiffs' summary, NCO points out that while the TCPA was undeniably intended to curb intrusive invasions of privacy resulting from unsolicited telemarketing calls, "the right of privacy is not absolute but is qualified by the rights of others." *Gouldman-Taber Pontiac, Inc. v. Zerbst*, 213 Ga. 682, 684, 100 S.E.2d 881, 883 (Ga.1957). *See also* Pub.L. 102-243 § 2 ¶¶ 10, 13 ("Individuals' privacy rights...and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices."). "[I]n a society greatly dependent upon the extension of credit, it is important that a creditor be allowed a certain degree of freedom in demanding payment." *Bundren v. Superior Court*, 145 Cal.App.3d 784, 789 (Cal.App. 2 Dist. 1983). Thus, at common law, reasonable efforts through the making of telephone calls are allowed reminding a debtor of her obligation to pay. See *Sears, Roebuck & Co. v. Moten*, 27 Ariz.App. 759, 763 (Ariz.App. 1976)("When a person accepts credit he impliedly consents for his creditor to take all reasonable and necessary action to collect the bill."); Restatement (Second) of Torts § 652B, cmt. d (1977). In light of these common law principles, the FCC has always recognized that debt

collection calls to a home are not invasive of privacy. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8755, 8773 (1992).

### A. Material Issues Presently Before the FCC Are Relevant Here

Plaintiffs argue there are no parallel issues pending before the FCC and this Court, that present capacity is not an issue here, and a good faith basis for calling is not relevant. *ECF No. 107, pp. 12-18*. Plaintiffs are wrong on all counts. Plaintiffs argue that the *software* alone used by NCO to make calls amounts to an automatic telephone dialing system (ATDS) as defined by the TCPA because the software manuals produced in discovery suggest that the software included options to make calls in a variety of ways. Plaintiffs assert the software demonstrates NCO used a predictive dialer to make calls, and a predictive dialer is an ATDS as defined in 47 U.S.C. § 227(a)(1)(A). *ECF No. 107, pp. 15-17*.

The murky question of what makes a "predictive dialer" an ATDS is undeniably pending before the FCC. NCO's RFJN, *Exh.* C, pp. 2-3 of 23; NCO's RFJN, *Exh.* D, p. 3; NCO's RFJN, *Exh.* H, p. 5.

NCO notes first, as the FCC pointed out in its 2003 Order, the FCC has reasoned that "a predictive dialer **is equipment** that dials numbers **and**, **when certain computer software is attached**, also assists telemarketers in predicting

when a sales agent will be available to take calls.... **The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order,** *or from a database of numbers....* The basic function of such equipment ... [is]–the *capacity* to dial numbers without human intervention" (emphasis added in part). *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14092, ¶¶ 131-32 (Jul. 3, 2003) (2003 FCC Order). Significantly, in reaching this conclusion, the FCC discarded as surplusage, the requirement that an ATDS must have the capacity "to store or produce telephone numbers to be called, ***using a random or sequential number generator****....*" 47 U.S.C. § 227(a)(1)(A). 2003 FCC Order ¶ 133("to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result."). The Ninth Circuit recognized that the FCC had adopted a distinctive formulation of the ATDS statutory definition when analyzing whether a "predictive dialer" is an ATDS by including an additional capacity not contained in the statute - that is, the capacity to store or produce telephone numbers "'...from a database of numbers.'" *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (quoting 2003

FCC Order at 14091). *Sherman v. Yahoo! Inc.* recognized that what matters in this analysis is whether the system has the capacity to "'store, produce, or call randomly or sequentially generated telephone numbers.'" *Sherman v. Yahoo! Inc.*, 997 F.Supp.2d 1129, 1135 (S.D.Cal. 2014)(quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir.2009)). But equally important is the question of whether the required "capacity" must be found in the configuration of the software and hardware at the time the calls were made, or the possible configuration with adjustments or modifications to the system.

Because these issues are before the FCC, the primary jurisdiction doctrine counsels in favor of a stay. *Higgenbotham v. Diversified Consultants, Inc.*, 2014 WL 1930885, *2 (D.Kan. 2014).

Second, relying on the FCC's "add-on" capacity to dial from a list of numbers *alone*, Plaintiffs argue that the NCO software had the "specified capacity to generate numbers and dial them without human intervention . . . from calling lists." *ECF No. 107, p. 9*. Plaintiffs never point to anything in the manuals suggesting the software had the capacity to "store, produce, or call randomly or sequentially generated telephone numbers." The evidence already before the court shows that NCO made calls using systems that did not have this capacity. *See ECF 95-2, Declaration of Stevens ¶ 7*. Nothing filed by Plaintiffs

with their opposition changes this.  In fact, interpreting the term ATDS as Plaintiffs propose, risks opening up the TCPA to overbreadth, as "'[v]irtually every telephone in existence, given a team of sophisticated engineers working doggedly to modify it, could possibly store or produce numbers using a random or sequential number generator." *De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605, *6 (S.D.Fla. 2014)(internal reference omitted). *Gragg v. Orange Cab Co., Inc.*, 995 F.Supp.2d 1189, 1196 (W.D.Wash. 2014).

Thus, the operative question Plaintiffs do not answer is whether the system has the present capacity, used or not, to "store, produce, or call randomly or sequentially generated telephone numbers." The FCC is expected to decide and is in the best position to interpret its own order and regulations to answer this question, and deference to its decision would be prudent.

Third, NCO points out that software alone does not make an ATDS, any more than having software installed on a smart phone makes it an ATDS. See *Hunt v. 21st Mortg. Corp.*, 2013 WL 5230061, *4 (N.D.Ala. Sept. 17, 2013).

Fourth, NCO's motion was accompanied by evidence that pointed out that some of the calls made in this case were to numbers (a) provided by Plaintiffs to their creditors, but no longer used by the plaintiffs at the time of the calls or (b) provided by a debtor to a creditor, but reached a Plaintiff instead. *ECF 95-2, ¶ 5-*

*6. Despite the fact that this case is "already almost two years old," ECF No. 107, p. 2,* Plaintiffs have been decidedly recalcitrant in providing any details concerning their claims to date and offer nothing but generalizations here. *See ECF Nos. 104, 106 pp. 3-4; ECF No. 107, pp. 11-12.*

Elaborating on the evidence obtained, based on the Plaintiffs compelled supplemental discovery responses provided September 23, 2014, at a minimum, show that Plaintiffs Thornton, Bell, Bolden and Martinez each had more than one cellular number during the class period. *Exh. M, N, O, P, Int. Resp. Nos. 2, 3; Exh. R, NCO Int. (Thornton) Resp. Nos. 18, 19.* Further, as to Plaintiff Thornton, he supplied his creditor with the number 828-387-6134, but ceased using the number before the class period. *Exh. M, Supp. Int. Resp. No. 10; Exh. Q, Int. Resp. No. 5, 10; Exh. X.* NCO called to reach him at that number, then at a residential number where he had resided, and a third number supplied to NCO by his mother. *Exh. R, NCO Int. (Thornton) Resp. Nos. 3, 5.* Thornton disputes his mother was authorized to do so. *Exh. Q, Int. Resp. No. 6.  Cf.  Mais v. Gulf Coast Collection Bureau, Inc.,* __ F.3d __,  2014 WL 4802457 *10-11 (11th Cir. 2014).

As to Plaintiff Bolden, Ms. Bolden claims to have received calls and text messages at (201) 304-4281. *Exh. O, Supp. Int. Resp. No. 3.* NCO called this number to reach non-party Justin Wade, who consented to be called at that

number by providing this number on his account application with the creditor at the time he opened his account. *Exh. S, NCO 006367, 6684; Exh. T, NCO Int. (Bolden) Resp. No. 3, p. 5 (re NCO acct. no. 2L0MYO).*

As to Plaintiff Martinez, Ms. Martinez claims to have received calls at (415) 519-8588 and (415) 260-8611. *Exh. P, Supp. Int. Resp. No. 3; Exh. U Int. Resp. No. 5.* Plaintiff claims to have subscribed to (415) 260-8611 prior to November 29, 2011, and after to (415) 519-8588. *Exh. U Int. Resp. No. 6.* Plaintiff Martinez supplied the 8611 number in connection with three American Express credit card debts, *Exh. V, NCO 006158-6160*, placed with NCO for collection April 23, 2011 and collection activities on the accounts ended November 5, 2013. *Exh. W, Int. (Martinez) Resp. No. 3.* NCO called the 8611 number before and after November 29, 2011, and manually called 8588. *Id.*

If the FCC determines that "prior express consent attaches to the person incurring a debt, and not the specific telephone number provided by the debtor at the time a debt was incurred; and (4) establish a safe harbor for autodialed 'wrong number' non-telemarketing calls to wireless numbers[,]" as requested by ACA International, *NCO's RFJN, Exh. C, pp. 2-3 of 23*, that determination will likely be dispositive in this case.

**B.     The Court's Authority to address Questions before the FCC**

Primary jurisdiction "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64 (1956). Because the questions before the FCC are within the special competence of the Commission, a stay is warranted.

### C. Risk of Inconsistent Adjudications

In light of the cases cited by Defendant and Plaintiffs in support of their respective positions, it is clear that reasonable minds could differ on the issues presented here. This warrants a finding of a risk of inconsistent adjudications.

### D. The Interests of Justice and Conservation of Judicial Resources Support a Stay

Plaintiffs' primary argument hinges on the entry of an indefinite stay. Plaintiffs concerns could be ameliorated were the Court to enter a stay for a fixed, stated period of time. Further, the Plaintiffs and the putative class would not be prejudiced because NCO ceased calling the Plaintiffs, *Exh. R, Int. Resp. No. 19*, and Defendant is expected to exit the debt collection market by year end. [1]

---

[1] http://www.egscorp.com/Recent_News/Expert_Global_Solutions_to_Sell_Segments_of_Accounts_Receivable_Management_Business_to_Platinum_Equity.html

### E. Prospective and Retroactive Application of FCC Orders

Whether an FCC Order has retroactive or prospective operation depends on the nature of the order. A ruling that simply clarifies an unsettled or confusing area of the law, does not change the law, but restates what the law according to the agency is and has always been: "It is no more retroactive in its operation than is a judicial determination construing and apply a statute to a case in hand." *Manhattan General Equip. Co. v. Commissioner*, 297 U.S. 129, 135 (1936).

Because the questions before the FCC would not amount to new law, but clarification of existing orders, application of the FCC order to the facts here would not be impermissibly retroactive.

### F. Factual Disputes Affected by Pending Petitions

As noted above in paragraph A, there are factual questions affected by pending petitions in this case.

### **CONCLUSION**

For the foregoing reasons, NCO Financial Systems, Inc. respectfully requests that the Court stay this action under the primary jurisdiction doctrine pending resolution by the FCC of the foregoing pending Petitions.

Dated: October 5, 2014	Sessions, Fishman, Nathan & Israel, L.L.C.


	<u>/s/ Michael D. Slodov</u>
	*Admitted pro hac vice*
	Attorney for Defendant
	NCO Financial Systems, Inc.