# EXHIBIT F

Debbie P. Kirkpatrick, Esq. (SBN 207112)
Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
dkirkpatrick@sessions-law.biz
drichard@sessions-law.biz

Michael D. Slodov (Ohio SCR# 0051678)
*Admitted Pro Hac Vice*
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C,
15 E. Summit St.
Chagrin Falls, Ohio 44022
Tel: 440.318.1073
Fax: 216.359.0049
mslodov@sessions-law.biz

Attorneys for Defendant NCO Financial Systems, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY MOLNAR, WESLEY THORNTON, AILEEN MARTINEZ, CHIQUITA BELL, TEYIA BOLDEN, AND ANTOINETTE STANSBERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NCO FINANCIAL SYSTEMS, INC.,<br><br>Defendant. | Case No.  13-CV-0131-BAS-JLB<br><br>NCO FINANCIAL SYSTEMS, INC.'S COMBINED MEET AND CONFER REQUEST, OBJECTIONS TO SUBPOENA TO THE ADT CORPORATION, MOTION TO QUASH AND FOR PROTECTIVE ORDER |

1

Please accept this correspondence as Defendant NCO Financial Systems, Inc.'s (NCO), Meet and Confer request regarding the above-captioned matter, objection to your subpoena dated July 25, 2014, in advance of filing a motion to quash and for protective order in order to prohibit you from obtaining the materials sought by subpoena.

Pursuant to Federal Rules of Civil Procedure 26(c)(1), 45(d)(3), Local Civil Rule 26.1, and Chamber Rules, NCO request an in-person conference to be set on a date on or before August 15, 2014. Please contact our office upon review of this correspondence to set up a conference date and time.

I.    **Introduction**

On July 25, 2014, counsel for Plaintiffs issued a subpoena to the ADT Corporation on behalf of Jeffrey Molnar seeking production of 16 categories of documents. For the reasons stated more fully below, NCO objects to the production of documents in each of the 16 categories, as the documents sought are not within the scope of permissible discovery, and should not be allowed at all and either a protective order should be issued prohibiting the discovery entirely, the subpoena ought to be quashed; if permitted in any respect, the documents should be subject to the protective order in this action.

II.    **The subpoena**

The subpoena requests the following documents, for the time period between January 1, 2008 to the present, unless otherwise noted below:

1.  All DOCUMENTS,[1] COMMUNICATIONS[2] and/or ESI,[3] exchanged between YOU[4] and NCO prior to April 1, 2014, IDENTIFYING means and methods used by NCO to contact PROPOSED CLASS MEMBERS.[5]

---

[1] "DOCUMENT" or "DOCUMENTS" shall mean any writings, letters, telegrams, memoranda, correspondence, email messages, memoranda or notes of conferences or telephone conversations, reports, studies, lists, compilations of data, papers, books, records, contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm, computer data files, printouts, accounting statements, mechanical and electrical recordings, checks, pleadings, and other tangible things upon which any handwriting, typing, printing, drawing, representation, photostatic, or other magnetic or electrical impulses or other form of communication is recorded, stored or produced, including audio and video recordings and electronically-stored information (including but not limited to e-mails, web pages, Websites, computer discs, computer programs and computer files, including, where applicable, compiled and uncompiled source code), whether or not in printout form. These terms shall also mean copies of DOCUMENTS even though the originals are not in your possession, custody or control; every copy of a DOCUMENT which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy; all attachments to any DOCUMENT; and any other DOCUMENT, item and/or information discoverable under federal law and procedure, including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

[2] "COMMUNICATION" or "COMMUNICATIONS" means or refers to the transmittal of information, facts or ideas INCLUDING communications in the form of any discussion, conversation, inquiry, negotiation, agreement, contract, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail message, instant message, text message, electronic chat, telegram, audio recordings, advertisement or other form of exchange of words, whether oral or written. "COMMUNICATION" or "COMMUNICATIONS" also means or refers to all written and unwritten but recorded correspondence, including non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, INCLUDING memos, letters analog or digital recordings, audio recordings, electronic chat logs, voicemail, email, computer files, computer disks, or other things sent or received by YOU to or from any entity, INCLUDING files maintained or exchanged internally within YOUR business or with YOUR employees.

[3] "ELECTRONICALLY STORED INFORMATION" or "ESI" as used herein, means and refers to computer generated information or data, of any kind, stored on computers, file servers, disks, tape or other devices or media, or otherwise evidenced by recording on some storage media, whether real virtual, or cloud based.

[4] "YOU," "YOUR," or "ADT" means or refers to The ADT Corporation, and its divisions, subsidiaries, related companies, predecessors, and successors, all present and former officers, directors, agents, attorneys, employees, and all persons acting or purporting to act on behalf of any of them.

[5] "'PROPOSED CLASS MEMBERS' means those PERSONS, INCLUDING PLAINTIFFS, who fall within the NCO Autodialer Class, the NCO Robocall Class, or the NCO Text Message Class that are defined in Paragraph 65 of the COMPLAINT." In turn, ECF No. 66, ¶ 65. defines the putative classes as follows:

    **Auto-Dialer Class:** Any person in the United States to whom Defendant (1) placed a call in connection with the collection of a debt; (2) made through the use of any automatic telephone dialing system; (3) to a cellular telephone number; (4) on which the individual called never consented to receive telephone calls from Defendant.

2. All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO prior to April 1, 2014 instructing NCO to contact PROPOSED CLASS MEMBERS.

3. All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO prior to April 1, 2014, instructing NCO to perform DEBT COLLECTION[6] services for YOU.

4. All DOCUMENTS, COMMUNICATIONS, and/or ESI exchanged between YOU and NCO prior to April 1, 2014, RELATED TO the PHONE CALLS.[7]

5. All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO RELATED TO the TCPA.

6. All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO RELATED TO the use of an AUTODIALER.[8]

---

**Robo-Call Class:** Any person in the United States to whom Defendant (1) placed a call in connection with the collection of a debt; (2) that featured an artificial or pre-recorded voice; (3) who never consented to receive telephone calls from Defendant at the number called.

**Text Message Class:** Any person in the United States to whom Defendant (1) placed a text message call in connection with the collection of a debt; (2) made through the use of any automatic telephone dialing system; (3) to a cellular telephone number; (4) on which the individual called never consented to receive text message calls from Defendant.

[6] "DEBT COLLECTION" means or refers to any attempt to communicate with a PERSON regarding an OUTSTANDING DEBT owed to YOU by that PERSON.

[7] "PHONE CALL" or "PHONE CALLS" means or refers to any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO).

[8] "AUTODIALER" means or refers to any telephone dialing equipment that can make telephone calls in an automated or automatic fashion, wherein a telephone call can be dialed by a machine, COMPUTER, or COMPUTER SYSTEM, INCLUDING telephone dialing equipment known as a "predictive dialer" or "autodialer."

7. All DOCUMENTS, COMMUNICATIONS and/or ESI RELATED TO access that NCO had to YOUR lists, databases or other information that IDENTIFY[9] OUTSTANDING DEBTS[10] owed to YOU.

8. All DOCUMENTS, COMMUNICATIONS, and/or ESI, RELATED TO and INCLUDING contracts or agreements with NCO RELATED TO the PHONE CALLS.

9. All DOCUMENTS, COMMUNICATIONS, and/or ESI, RELATED TO call lists or other records that IDENTIFY PROPOSED CLASS MEMBERS that NCO called on YOUR behalf.

10. All DOCUMENTS, COMMUNICATIONS, and ESI, RELATED TO call scripts, instructions for, or records of PHONE CALLS made by NCO on YOUR behalf.

---

[9] "IDENTIFY" when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to IDENTIFY its principal proprietors, officers and/or directors. "IDENTIFY" when used with respect to a COMMUNICATION, means to state type of COMMUNICATION (i.e., telephone discussion, email, face-to- face, etc.), the name and present address of each PERSON present during the COMMUNICATION, or who otherwise observed or heard the COMMUNICATION and to state the subject matter of the COMMUNICATION and the DATE upon which it occurred. If the COMMUNICATION was in writing, IDENTIFY all DOCUMENTS that RELATE or are RELATED TO the COMMUNICATION in the manner provided above. "IDENTIFY" when used with respect to a DOCUMENT, means to state the DATE(S) prepared, drafted or generated, the author(s), intended and actual recipient(s), type of DOCUMENT (e.g., "letter," "Terms of Service" or "email"), and to IDENTIFY its last known custodian or location. "IDENTIFY" when used in reference to an event, transaction, or occurrence, means to describe the act in complete and reasonable detail; state the time, DATE, location; IDENTIFY all PERSONS participating or present; and IDENTIFY all DOCUMENTS RELATING thereto. "IDENTIFY" when used with respect to a natural PERSON, means to state the PERSON'S full name, present or last known business affiliation and position, past and present home address and past position and business affiliation, if any, with any of the parties herein.

[10] "OUTSTANDING DEBT" and "OUTSTANDING DEBTS" mean or refer to any consideration, monetary or otherwise, owed to YOU, directly or indirectly, during the RELEVANT TIME PERIOD.

11. All DOCUMENTS, COMMUNICATIONS, and/or ESI, RELATED TO DEBT COLLECTION policies, procedures, or practices used by YOU during the RELEVANT TIME PERIOD.[11]

12. All DOCUMENTS, COMMUNICATIONS and/or ESI, INCLUDING invoices, RELATED TO NCO billing YOU for DEBT COLLECTION and/or the PHONE CALLS.

13. All DOCUMENTS, COMMUNICATIONS, and/or ESI RELATED TO payments made or received by YOU or NCO RELATED TO the PHONE CALLS, INCLUDING invoices, order forms, and receipts of payment.

14. All DOCUMENTS, COMMUNICATIONS and/or ESI that IDENTIFY the number of PHONE CALLS made by NCO on YOUR behalf.

15. All DOCUMENTS, COMMUNICATIONS, and/or ESI that IDENTIFY YOUR policies RELATED TO the use of third parties (INCLUDING NCO) for DEBT COLLECTION.

16. All DOCUMENTS, COMMUNICATIONS and/or ESI maintained by YOU that contain INFORMATION RELATED TO PROPOSED CLASS MEMBERS and that were viewed or accessed by NCO.

## A.   **Relevant legal standards**

Federal Rules of Civil Procedure Rule 45 provides in pertinent part:

---

[11] "RELEVANT TIME PERIOD" means or refers to the time period from January 1, 2008 to the present.

6

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

Fed.R.Civ.P. 45(d)(3). Further, Federal Rules of Civil Procedure 26(c) provides:

**(c) Protective Orders.**

**(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;

7

**(B)** specifying terms, including time and place, for the disclosure or discovery;

**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;

**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed.R.Civ.P. 26(c). The Advisory Committee Notes to the 1970 Amendments to Rule 45 state that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Fed R. Civ. P. 45 advisory committee notes on 1970 amendments. Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). Fed. R. Civ. P. 34. See also, *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir.1994) (applying both Rule 26 and Rule 45 standards to rule on a motion to quash subpoena). Further, under the Federal Rules, "[p]arties may obtain discovery regarding any matter, not privileged, that is

relevant to the claim or defense of any party .... relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevancy is defined broadly, although it is not without "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)(quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). A court also has discretion to limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2). "[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.' " *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 163 F.R.D. 329, 335–36 (N.D.Cal.1995). Relevant evidence is defined as evidence that has "(a) any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401.

While "a party [generally] lacks standing under Federal Rules of Civil Procedure Rule 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena[,]" *In re REMEC, Inc. Securities Litigation*, 2008 WL 2282647, 1 (S.D.Cal. 2008), a party may move for a protective order under Rule 26(c), to address documents sought from a non-party by subpoena. *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D.Cal. 2006). As for relevance and burden, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings. Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." *Libaire v. Kaplan*, 760 F.Supp.2d 288, 291 (E.D.N.Y.2011).

In *Oppenheimer,* the Supreme Court held that the names and addresses of putative class members were not "within the scope of legitimate discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354; see also *id*., 437 U.S. at 351 n. 13 (observing that precertification discovery of the names and addresses of putative class members may be allowable when relevant to issues "upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of

representation."); *Knutson v. Schwan's Home Service, Inc.*, 2013 WL 3746118, *3 (S.D.Cal. Jul 15, 2013) (discovery dispute; applying *Oppenheimer* in TCPA action); *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D.Cal. Apr 02, 2014)(same); *Dubin & Dubin LLP v. Mayorga*, 2013 WL 3989550, *4 (W.D.N.Y. 2013)(quashing precertification subpoena seeking names and addresses in putative FDCPA action).

Finally, a Plaintiff in a putative class action is not entitled to discovery for the claims he is unable to pursue on behalf of a class. *Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 503 (E.D.Cal. 2012) (citing *Hawkins v. Comparet–Cassani,* 251 F.3d 1230, 1238 (9th Cir.2001) ("[a] named plaintiff cannot represent a class alleging ... claims that the named plaintiff does not have standing to raise"); *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364 ("a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members").

B.  **OBJECTIONS APPLICABLE TO ALL REQUESTS FOR PRODUCTION.**

1.  **Plaintiff Molnar lacks standing to seek discovery from ADT Corporation.**

Jeffrey Molnar was never indebted to ADT Corporation; he was never called by NCO on behalf of ADT for a debt owed to ADT, he received no text message or artificial or pre-recorded message related to a debt NCO was attempting to collect

11

in this litigation for or on behalf of ADT. As such, he lacks standing to seek any of the categories of discovery sought in the subpoena from ADT. *Soto, supra.*

Further, Plaintiff Molnar was called by NCO at his home telephone number by NCO, but the records produced by Verizon a show Plaintiff Molnar was forwarding calls made to his residential number to his cellular phone. NCO 2189-2194; 4333-4901. The FCC has exempted calls to a residential land line by rule or order from the scope of 47 U.S.C. § 227(b)(1)(B). 2008 FCC Ruling ¶ 4; *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8773, ¶ 39 (July 26, 1995) (1995 TCPA Ruling); *Meadows v. Franklin Collection Service, Inc.* 414 Fed.Appx. 230, 235, 2011 WL 479997, *4 (11th Cir. 2011); *Daniels v. Comunity Lending, Inc*., 2014 WL 51275, *5 (S.D.Cal. Jan. 6, 2014), citing *Mashiri v. Ocwen Loan Servicing, LLC,* No. 12–cv–02838–L–MDD, 2013 WL 5797584, at *3 (S.D.Cal. Oct.28, 2013)( citing 47 C.F.R. 64.1200(a)(2) (iii-iv)). The FCC has also clarified that "all debt collection circumstances involve a prior or existing business relationship." 7 FCC Rcd. 8752, at 8771-72, ¶ 36.

Thus, Plaintiff Molnar is not a member of the cell phone class, the robo call class or the text message class. As such, he lacks standing to seek any of the categories of discovery sought in the subpoena from ADT. *Soto, supra.*

2.   **The requests for production are unreasonably burdensome, oppressive, duplicative, require extensive sifting and analysis, and any need for these documents is not sufficient to outweigh the burden.**

To the extent that the term "documents," "communications" and "ESI" are defined so broadly and seek the same information in multiple formats, from multiple locations, the request calls for the production of multiple copies of the same information contained in or derived from multiple locations, is unreasonably burdensome, oppressive, and duplicative, and would require extensive sifting and analysis. Thus, any need for these documents is not sufficient to outweigh the burden. *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975).

3.   **The requests for production are temporally overbroad and unduly burdensome.**

The time frame for the request, for the period between January 1, 2008 and April 1, 2014 is overbroad, because the only ADT account placed with NCO for collection was placed with NCO October 18, 2011 and collection activities on the account ended April 10, 2012.  NCO 2219-2220. Further, at the time NCO made calls on that account in 2012, the telephone number NCO called ending in 8611 was no longer being used by Plaintiff Martinez, who ceased using the number November 29, 2011. Response to Interrogatory No. 6.

13

4.   **The requests for production are not "within the scope of legitimate discovery."** *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354.

To the extent any of the requests seek to obtain the names and addresses of putative class members, the requests are not "within the scope of legitimate discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354.

5.   **The information requested cannot be ascertained without extensive analysis, is cumulative and duplicative of information already produced, and would result in undue burden.**

Plaintiffs have requested information related to "proposed class members" in RFP 1, 2, 9, and 16, but the identification of "proposed class members" requires an assessment of whether NCO made telephone calls or sent text messages in connection with the collection of a debt using an automatic telephone dialing system or an artificial or prerecorded voice, for which the person called never consented to receive telephone calls. *Supra*, n. 5. The determination of whether any person falls within the definition, is unreasonably burdensome, oppressive, and duplicative, and would require extensive sifting and analysis. Thus, any need for these documents is not sufficient to outweigh the burden. *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975).

Assessing whether anyone is a "proposed class members," initially requires an assessment of the elements of the cause of action. *Parsons v. Ryan*, 754 F.3d

657, 674-76 (9th Cir. 2014);*Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577-79 (S.D.Cal. 2013). A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc*., 2014 WL 51275, *5 (S.D.Cal. Jan. 6, 2014). As should be evident from the following details relating to the 35 collection accounts relating to the Plaintiffs and former plaintiffs in this action discussed below, there are unique questions of fact and law applicable to each account, that are not common to other accounts, the defendant's conduct was not common as to all of the Plaintiffs, and the Plaintiffs were not harmed by the defendant's conduct.

The calls made to Plaintiff Molnar relating to the Bowling Green Orthopaedics debt (SMF293) were made to a residential telephone line (419-874-8119) and not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2189-2194. The calls were forwarded by Plaintiff Molnar to a cellular phone (419-376-8300). NCO 4333-4901. Prior express consent existed, as Plaintiff Molnar supplied the phone numbers to his creditor at the time service was obtained, and the phone numbers Plaintiff Molnar provided to his creditor, were in turn supplied by the creditor to NCO. See NCO 2190, 4265-4269; 4902-4915.

The calls made to Plaintiff Thornton relating to the New River Light & Power debt (2C7E4B) were made to a residential telephone line (334-792-8790), until Plaintiff Thornton's mother provided NCO with his new cellular number (202-744-4364) and authorization to call the cellular number. NCO 2195-2205. The creditor supplied the 828-387-6134 phone number to NCO at the time the account was placed for collection, which was Plaintiff Thornton's prior cellular number. NCO 2196. Plaintiff Thornton consented to be called on his prior cellular telephone (828-387-6134) at the time he opened his account. NCO 4329.

The calls made to Plaintiff Thornton relating to his First Premier Bank (BSQ034) debt were made to a residential telephone line (334-792-8790), and not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2209-2214. The creditor supplied a work number of 334-714-1167 to NCO at the time of placement. NCO 2210.

The calls made to Plaintiff Thornton relating to his Genesis Financial Solutions/Bank of America (FR4370) debt were made to a residential telephone line (334-792-8790), and not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2215-2218. The creditor supplied a home number of 334-792-8790 to NCO at the time of placement. NCO 2215.

The calls made in an effort to reach Plaintiff Thornton relating to his American Honda Financial (UQE904) debt were made to a cellular number ((828)

16

387-6134) that was no longer being used by Plaintiff Thornton at the time of the calls. NCO 2435-2437; Plaintiff Thornton's response to interrogatory no. 5. The creditor supplied home number placed 828-387-6134, work number placed 828-262-1136 to NCO at the time the account was placed for collection.   Thus, Plaintiff Thornton was not the "called party" at the time of the calls. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir.2012).

NCO made no calls to Plaintiff Thornton relating to his debt to Nationwide (6Q62WN). NCO 2206-2208.

The calls made to Plaintiff Martinez relating to her ADT Security Services, Inc. debt (UNZ935) to (415) 260-8611 were made to a cellular number that was no longer being used by Plaintiff Martinez at the time of the calls. NCO 2219-2221; Plaintiff Martinez response to Interrogatory no. 6. Thus, Plaintiff Martinez was not the "called party" at the time of the calls. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir.2012). The creditor supplied a home number of 415-260-8611 to NCO at the time of placement.

The calls made to Plaintiff Martinez relating to her three American Express card debts (JV6336, JV6346, JV6352) were made in the presence of prior express consent to call (415) 260-8611, as Plaintiff Martinez supplied her cellular number

17

to American Express at the time she opened her accounts, and the phone numbers Plaintiff Martinez supplied to American Express were in turn supplied by the creditor to NCO. NCO 2222-2297; 6158-6366; 4966-5031, 2224, 2253, 2272.. Calls made to (415) 268-6723 in connection with JV6336, were made to a residential telephone line, and not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling. The calls made in an effort to reach Plaintiff Martinez after she ceased using the '8611 number on or around November 29, 2011 relating to her American Express debt were made to a cellular number that was no longer being used by Plaintiff Martinez at the time of the calls. NCO 2222-2297; Plaintiff Martinez's response to interrogatory no. 6. Thus, Plaintiff Martinez was not the "called party" at the time of some of the calls. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir.2012). NCO manually dialed the 8588 number on or about March 5, 2013 and on March 5, 2013, as manual, live, person-to-person calls to cellular numbers are not prohibited by the TCPA. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 274 (3rd Cir. 2013). Ms. Martinez consented to be called by NCO at 415-519-8588. NCO 4330-4332, call recording JV6336U15-AmexVaughn,Eric03051302.46PM4155198588 - Copy.wav.mp3.

The calls made to Plaintiff Bell relating to her debts to Progressive Insurance (21MHE4, 1X6748,  4E9SPW), were made to residential telephone

lines ((229)377-9578, (229) 558-9045) appearing on her application, and not subject to the TCPA. NCO 2423-2434; 4720-4317. The creditor supplied home numbers of 229-377-9578 (4E9SPW), 229-558-9045 (1X6748), and 229-377-8854 (21MHE4) to NCO at the time of placement. NCO 2431, NCO 2426, NCO 2423.

The calls made to Plaintiff Bolden relating to her debt to Optimum (8M0VO9) were made to a cellular number (201-522-3295) that was no longer being used by Plaintiff Bolden at the time of the calls. NCO 2298-2302; Plaintiff Bolden response to Interrogatory No. 5, 7. Thus, Plaintiff Bolden was not the "called party" at the time of the calls. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir.2012).

The calls made to Plaintiff Bolden relating to her debt to TD Bank (5M6KSC) to 201-647-4305 were made to a cellular number that was no longer being used by Plaintiff Bolden at the time of the calls. NCO 2303-2306; Plaintiff Bolden response to Interrogatory No. 5, 7. Thus, Plaintiff Bolden was not the "called party" at the time of the calls. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir.2012). NCO made a single call manually on July 15, 2013 to 201-647-4305, as manual, live, person-to-person calls to cellular numbers are not

prohibited by the TCPA. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 274 (3rd Cir. 2013). The creditor supplied a home number of 201-647-4305 to NCO at the time of placement. NCO 2304.

The calls made to Plaintiff Bolden relating to her debt to PNC Bank (9A7LR1) were made to a residential line (973-923-2020) not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2307-2314. Plaintiff Bolden also consented to be called at the time she opened this account (at 201-357-5248 & 973-923-2020). NCO 4939.  The creditor supplied a home number of 973-923-2020 to NCO at the time of placement. NCO 2308.

The calls made to Plaintiff Bolden relating to her debt to Perimiter/Ballys (UYS308), were made to a residential line ((201) 342-5982) not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2315-2365. The creditor supplied home number of 201-342-5982, and work number of 201-488-0330 to NCO at the time of placement. NCO 2316.

The calls made to Plaintiff Bolden relating to her TD Bank debt (2D6VFA) were made to the home number placed by TD Bank with NCO (201) 304-4281, NCO 2367, which on information and belief was listed on the account application at the time the account was opened. See NCO Subpoena dated August 1, 2014 to TD Bank (response pending); NCO 2366-2370, 6367-6734.

The calls made to Plaintiff Bolden relating to her TD Bank debt (2A5FWS) were made to a residential line ((201) 357-5248) not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 4132-4138. Further, the calls were made to a number Plaintiff Bolden consented to be called on ((201) 357-5248) at the time she opened her account, and the phone numbers Plaintiff Bolden supplied to TD Bank were in turn supplied by the creditor to NCO. NCO 6637, NCO 4133. The creditor supplied home number of 201-357-5248, and work number of 973-646-0302 to NCO at the time of placement. NCO 4133.

The calls made relating to TD Bank debt (2L0MYO) were made to (201) 304-4281 in an effort to reach Justin J. Wade, who consented to be called at that number at the time he opened his account on or about August 3, 2010. NCO 4139-4142, NCO 6684. The creditor supplied home number of 201-304-4281 to NCO at the time of placement. TD Bank in turn provided NCO with the number called at the time the account was placed for collection. The calls were made during the period between November 17, 2010 and May 21, 2011. Plaintiff Bolden claims to have used the same number (201) 304-4281 from approximately January 1, 2009 until around 2011. Plaintiff Bolden's response to Interrogatory No. 7. However, Plaintiff Bolden was the subscriber to (201)-647-5034 during the period between December 1, 2010 and May, 2014. NCO 5043-6118. Plaintiff Bolden and Mr.

Wade apparently had a relationship during the period in question. NCO 4947, 4948, 6376.

The calls made relating to TD Bank debt (3D4KZK) were made to (201) 304-4281 in an effort to reach Justin J. Wade who consented to be called at that number at the time he opened one of his TD Bank accounts on or about August 3, 2010. NCO 4143-4147, NCO 6662 (listing 201-304-1913), 6684 (listing (201) 304-4281). TD Bank in turn provided NCO with the number 201-304-4281 as the home number at the time the account was placed for collection. Calls were placed to (201) 304-4281 during the period 05/25/11 to 10/26/11. Plaintiff Bolden claims to have used the same number (201) 304-4281 from approximately January 1, 2009 until around 2011. Plaintiff Bolden's response to Interrogatory No. 7. However, Plaintiff Bolden was the subscriber to (201)-647-5034 during the period between December 1, 2010 and May, 2014. NCO 5043-6118. Plaintiff Bolden and Mr. Wade apparently had a relationship during the period in question. NCO 4947, 4948, 6376.

NCO made no calls to Plaintiff Bolden relating to her debt to MTA Bridges and Tunnels (42515913). NCO 4956-4957.

The calls made to Plaintiff Stansberry relating to her debt to Sprint (5B9ILC) were made to a residential line ((708) 226-9673) and not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2371-2380.  The creditor

supplied home number of 708-226-9673, to NCO at the time of placement. NCO 2372.

The calls made to Plaintiff Stansberry relating to her debts to the Mason Companies, (Masseys (5N2WQE), Stoneberry (5O9ADQ), and Mason Easy Pay (5O9ADR)), were substantially all made to a residential line ((708) 226-9673) and not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2381-2393. The creditor supplied home number of 708-226-9673, to NCO at the time of placement on all three accounts. NCO 2382, 2386, 2389. Further, the calls were made to a number Plaintiff Stansberry consented to be called on ((708) 226-9673) at the time she opened her account. NCO 4318-4328. Further, calls made to 773-406-3284, Plaintiff Stansberry's cellular number (see Plaintiff Stansberry's response to Interrogatory No. 2) relating to Plaintiff Stansberry's debt to Stoneberry (5O9ADQ) were manually dialed, as manual, live, person-to-person calls to cellular numbers are not prohibited by the TCPA. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 274 (3rd Cir. 2013).

The calls made in an effort to reach Plaintiff Stansberry relating to her debt to Global Payments/Apple Chevrolet (GZR002) were made to a residential line ((708)226-0296) and the number called was not used by Plaintiff Stansberry during the time the calls were made. Plaintiff Stansberry's response to

interrogatory no. 7 [sic]. The creditor supplied home number of 708-226-0296, to NCO at the time of placement. NCO 2395.

The calls made in an effort to reach Plaintiff Stansberry relating to her debt to College Students Landscaping/Transworld Systems, Inc. (KFA613), were made to a residential line ((708) 226-9673) not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2398-2404. The creditor supplied home number of 708-226-9673, to NCO at the time of placement. NCO 2399.

The calls made in an effort to reach Plaintiff Stansberry relating to her debt to Certigy Check Service/Footlocker (VD0622) were made in 2005, and any such calls are time barred, and subject to a prior release.  NCO 2405-2408; 4166-4253.

The calls made in an effort to reach Plaintiff Stansberry relating to her debt to IDT Telecom/Port AQSTN (XSA689) were made to a residential line ((708)226-0296) not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 2409-2422. The creditor supplied home number of 708-226-0296, to NCO at the time of placement.

The calls made in an effort to reach Wendy Torrez that reached former Plaintiff Alexander Monge concerning her debt to Los Angeles Fire Department Ambulance Service (LOSANG 45456088), were made to a cellular telephone number ((323) 445-0206) in the presence of prior express consent. NCO 6119-

6128, 6129, 6147-6157. The creditor supplied the phone number (323) 445-0206 to NCO at the time the account was placed for collection. NCO 6121.

The calls made in an effort to reach former Plaintiff Rosemary House relating to her debt to Sutter General Hospital (31097434 & 39503050), were made to a residential line (916-928-4950), not subject to the TCPA. See 1995 FCC Ruling; 2008 FCC Ruling; NCO 6130-6143. The creditor supplied the phone number 916-928-4950 to NCO at the time the account was placed for collection. NCO 6130, 6138.

Calls were made to 916-420-4366 in an effort to reach J.D. concerning a debt she owed to Pacific Gas and Electric; at the time of the calls, 916-420-4366 may have been a reassigned number, used by Rosemary House. NCO 6144-6146. The creditor supplied the phone number 916-420-4366 to NCO at the time the account was placed for collection. NCO 6144.

Thus, it is not possible to ascertain who is a proposed class member without conducting a searching inquiry of each account placed with NCO for collection, and assessing all the account details to determine whether the number called was a residential or cellular number, whether the debtor supplied the telephone number to the creditor at the time the account was opened, whether the telephone number was provided to NCO at the time the account was placed for collection, whether

the number called was the debtor's telephone number at the time of the calls, and how the calls in issue were placed by NCO.

Because the information requested cannot be ascertained without extensive analysis, is cumulative and duplicative of information already produced, and would result in undue burden, further discovery ought not to be allowed.

C.   **OBJECTIONS APPLICABLE TO SPECIFIC REQUESTS FOR PRODUCTION:**

1.   ***RPF No. 1[12]***

a.   The request is not relevant and not likely to lead to the discovery of admissible evidence, as whatever means or methods of contacting debtors of ADT might have communicated to NCO, or that NCO might have communicated to ADT, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor,* 329 U.S. 495, 501, (1947); Fed. R. Evid. 401.   The only means and methods of contacting debtors which has any relevance to this case are means and methods involving telephone contacts. To the extent the request seeks all documents, communications, and/or ESI related to means and methods of contacting debtors other than by telephone, the request is

---

[12] All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO prior to April 1, 2014, IDENTIFYING means and methods used by NCO to contact PROPOSED CLASS MEMBERS.

irrelevant and overbroad, as literally construed, the request would also encompass means of communication other than by telephone, such as written correspondence, emails, credit reporting, and potentially litigation. Such means and methods have nothing to do with a claim under the TCPA.

There is no evidence in this case that NCO utilized text messaging to communicate with anyone, let alone "proposed class members."

Further, calls made to residential telephone lines using an artificial or prerecorded voice attempting to collect a debt have been exempted from the scope of the TCPA. *Daniels, supra.*

Plaintiff Molnar consented to be called at both his residence and on his cellular phone. NCO 4902-4915. Plaintiff Molnar thus lacks standing to seek discovery related to this request because he is not a member of the cell phone class, the robo call class or the text message class.

b.      NCO has already produced all its records indicating the means and methods used by NCO to communicate with the Plaintiffs; thus, the request is cumulative and duplicative of evidence already produced; the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in

27

resolving the issues. *See also* paragraph B(5), *supra*, incorporated herein by reference.

c.     The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels, supra.* The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

*2.* **RPF No. 2**[13]

A.     As discussed above, it is impossible to determine who is a proposed class member without conducting a searching inquiry of each file; as such, the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* paragraph B(5), *supra*, incorporated herein by reference. Further, as NCO has already produced its records showing when and how each Plaintiff was contacted with respect to each debt, the request seeks cumulative or duplicative evidence.

---

[13] All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO prior to April 1, 2014 instructing NCO to contact PROPOSED CLASS MEMBERS.

B.    The request is not relevant and not likely to lead to the discovery of admissible evidence, as whatever instructions to contact debtors of ADT might have communicated to NCO, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense,* 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor,* 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels, supra.* The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

C.    To the extent the request seeks all documents, communications, and/or ESI related to instructions to contact debtors, the request is irrelevant and overbroad, as literally construed, the request would also encompass means of communication other than by telephone, such as written correspondence, emails, credit reporting, and potentially litigation. Such means and methods have nothing to do with a claim under the TCPA.

D.     There is no evidence in this case that NCO utilized text messaging to communicate with anyone, let alone "proposed class members."

E.     Further, calls made to residential telephone lines using an artificial or prerecorded voice attempting to collect a debt have been exempted from the scope of the TCPA. *Daniels, supra.*

F.     Plaintiff Molnar consented to be called at both his residence and on his cellular phone. NCO 4902-4915. Plaintiff Molnar thus lacks standing to seek discovery related to this request because he is not a member of the cell phone class, the robo call class or the text message class.

### *3. RPF No. 3*[14]

A.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as whatever instructions to contact debtors of ADT might have communicated to NCO, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO

---

[14] All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO prior to April 1, 2014, instructing NCO to perform DEBT COLLECTION services for YOU.

of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, supra. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

B.   To the extent the request seeks all documents, communications, and/or ESI related to instructions to undertake debt collection, the request is irrelevant and overbroad, as literally construed, the request would also encompass means of communication other than by telephone, such as written correspondence, emails, credit reporting, and potentially litigation. Such means and methods have nothing to do with a claim under the TCPA.

C.   As discussed above, NCO has already produced its records showing when and how each Plaintiff was contacted with respect to each debt, and the request seeks cumulative or duplicative evidence.

### 4. RPF No. 4[15]

A.   The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is defined to include "any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO)." Whatever telephone calls ADT made, or a third

---

[15] All DOCUMENTS, COMMUNICATIONS, and/or ESI exchanged between YOU and NCO prior to April 1, 2014, RELATED TO the PHONE CALLS.

party (other than NCO made) has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO.

B.    To the extent the request seeks all documents, communications, and/or ESI communicated to NCO and related to telephone calls made by ADT or another acting on behalf of ADT other than NCO, the request is irrelevant and overbroad, as literally construed, the request would also encompass all information regarding prior attempts to collect a debt by telephone communicated to NCO. Such prior communications have nothing to do with Plaintiffs' claims under the TCPA.

### *5. RFP No. 5*[16]

A.    The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "related to the TCPA" is defined to include "discussing, mentioning, addressing, referring to, analyzing, comprising,

---

[16] All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO RELATED TO the TCPA.

underlying, memorializing, describing, or showing the subject indicated;" whatever communications may have been exchanged between ADT and NCO concerning the TCPA has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc.*, 2014 WL 51275, *5. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, supra. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

B.    Likewise, there can be no argument that imparting knowledge regarding the requirements of the TCPA is relevant in this case. The statute imposes strict liability for violations. See *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.2011), *cert. denied* 132 S.Ct. 553 (2011); *Branham v. ISI Alarms, Inc.*, No. 12–CV–1012, 2013 WL 4710588, \*8 (E.D.N.Y.2013). To obtain treble damages, Plaintiffs only need to show either that NCO had "reason to know, or should have known, that ...[its] conduct would violate the statute," *Maryland v. Universal Elections, Inc.*, 862 F.Supp.2d 457, 463 (D.Md. 2012), or a voluntary act. *Bridgeview Health Care Center Ltd. v. Clark*, 2013 WL 1154206, \*7 (N.D.Ill. Mar 19, 2013).

C.    In either case, NCO was undoubtedly aware of the requirements of the TCPA in 2008, as is evident from the *Bellows* settlement, and therefore any discovery regarding information imparted to NCO by its clientele would be cumulative or duplicative. NCO 4166-4253; S.D. Ca. Case No. 3:07-cv-01413, ECF No. 22-2 (8/29/08), 38 (12/22/08). The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, supra. The information sought by this request has no bearing on any of these issues.

D.    Further, NCO has already produced its policies and procedures for compliance with the TCPA. NCO 85-150; 2438-2704; 3923-3956. Thus, the request seeks cumulative and duplicative evidence.

### 6. RFP No. 6[17]

A.    The request is not relevant and not likely to lead to the discovery of admissible evidence, because the any communication concerning the use of an autodialer will not tend to establish, or have any "tendency to make a fact more or less probable than it would be without the evidence," Fed.R.Evid. 401(a),  that the equipment used by NCO does or does not constitute an autodialer, or that class certification is appropriate in this case. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc.*, 2014 WL 51275, *5. Whether or not ADT communicated with NCO regarding the use of an autodialer has no tendency to establish whether NCO used an automatic telephone dialing system, artificial or prerecorded voice to call Plaintiffs. What matters in this analysis is whether the  hardware and software has the capacity to call without human intervention. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.2012). As such, there is no possibility

---

[17] All DOCUMENTS, COMMUNICATIONS and/or ESI, exchanged between YOU and NCO RELATED TO the use of an AUTODIALER.

that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947). The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, *supra*. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

B.      Likewise, there can be no argument that imparting knowledge regarding the requirements of the TCPA is relevant in this case. The statute imposes strict liability for violations. See *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.2011), *cert. denied*, 132 S.Ct. 553 (2011); Branham v. ISI Alarms, Inc., No. 12–CV–1012 (ARR)(MDG), 2013 WL 4710588, *8 (E.D.N.Y.2013). To obtain treble damages, Plaintiffs only need to show either that NCO had "reason to know, or should have known, that ...[its] conduct would violate the statute," *Maryland v. Universal Elections, Inc.*, 862 F.Supp.2d 457, 463 (D.Md. 2012), or a voluntary act. *Bridgeview Health Care Center Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D.Ill. Mar 19, 2013).

C.     In either case, NCO was undoubtedly aware of the requirements of the TCPA in 2008, as is evident from the *Bellows* settlement, and therefore any discovery regarding information imparted to NCO by its clientele would be duplicative. NCO 4166-4253; S.D. Ca. Case No. 3:07-cv-01413, ECF No. 22-2 (8/29/08), 38 (12/22/08). The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, supra. The information sought by this request has no bearing on any of these issues.

D.     Further, NCO has already produced its policies and procedures for compliance with the TCPA, and its manuals for the software used to make calls. NCO 85-150; 191-2156; 2438-2704; 2705-3922; 3923-3956; 3957-4131. Thus, the request seeks cumulative and duplicative evidence.

### 7. RFP No. 7[18]

A.     It is not clear what the request relates to, to the extent it seeks documents related to access NCO had to information, lists or data that identifies outstanding debts owed to ADT. As such, the request is ambiguous.

B.     To the extent the request seeks to obtain information which identifies "outstanding debts" owed to ADT, the request seeks confidential commercial information entitled to protection, irrelevant to the allegations in the Complaint and

---

[18] All DOCUMENTS, COMMUNICATIONS and/or ESI RELATED TO access that NCO had to YOUR lists, databases or other information that IDENTIFY OUTSTANDING DEBTS owed to YOU.

not likely to lead to the discovery of admissible evidence. Customer lists, vendor lists, sales and revenue information qualify as confidential commercial information. *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc*., 242 F.R.D. 552, 555 n. 4 (C.D.Cal.2007), and the information qualifies as confidential commercial information under Rule 26(c)(1)(G).

C.     Information concerning debts owed by persons unrelated to the named Plaintiffs is restricted from disclosure under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692b, 1692c(b), 1692d; see e.g., *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1026 (9th Cir. 2012); the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802(e); 16 C.F.R. § 313.15, *see e.g., Sohal v. Federal Home Loan Mortg. Corp*., 2012 WL 4113721, *3 (N.D.Cal. 2012)(information subject to GLBA may be obtained under a protective order); the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f), (g); 12 C.F.R. §1022.31, *McFarland v. Bob Saks Toyota, Inc.,* 466 F.Supp.2d 855, 867 (E.D.Mich.2006)(improper re-use of credit report); and/or the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g & its corresponding regulations, 34 C.F.R. §§ 99.1 *et seq.*

D.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "related to ... access that NCO had" is defined to include "discussing, mentioning, addressing, referring to, analyzing, comprising, underlying, memorializing, describing, or showing the subject indicated;" whatever

communications may have been exchanged between ADT and NCO concerning their relationship has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc.*, 2014 WL 51275, *5. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels, supra*. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

E.     To the extent any of the requests seek to obtain the names and addresses of putative class members, the requests are not "within the scope of legitimate discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354.

### 8. RFP No. 8[19]

A.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is defined to include "any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO);" whatever telephone calls ADT made, or a third party (other than NCO made) has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO.

B.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is not limited to telephone calls made to cellular phones with an automatic telephone dialing system, or using an

---

[19] All DOCUMENTS, COMMUNICATIONS, and/or ESI, RELATED TO and INCLUDING contracts or agreements with NCO RELATED TO the PHONE CALLS.

artificial or prerecorded voice. To the extent the request seeks information relating to calls made to residential landlines, as noted above, there is no viable claim in this litigation for debt collection calls to a residential line. *Daniels, supra*. To the extent the request seeks information relating to text messages, there is no evidence of any text message ever having been received by any of the named plaintiffs.

C.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "related to ... contracts or agreements" is defined to include "discussing, mentioning, addressing, referring to, analyzing, comprising, underlying, memorializing, describing, or showing the subject indicated;" whatever communications may have been exchanged between ADT and NCO concerning the their contract or agreements has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc*., 2014 WL 51275, *5. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this

litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels, supra*. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

D.     The request seeks confidential commercial information entitled to protection, irrelevant to the allegations in the Complaint and not likely to lead to the discovery of admissible evidence.

E.     Further, as NCO has already produced its records showing when and how each Plaintiff was contacted with respect to each debt, the request seeks cumulative or duplicative evidence.

### *9. RFP No. 9[20]*

A.     The names and addresses of putative class members are not "within the scope of legitimate discovery." *Oppenheimer, supra*; *Knutson, supra; Gusman, supra*; *Mayorga,  supra*.

---

[20] All DOCUMENTS, COMMUNICATIONS, and/or ESI, RELATED TO call lists or other records that IDENTIFY PROPOSED CLASS MEMBERS that NCO called on YOUR behalf.

B.    Plaintiff Molnar is not a member of the cell phone class, the robo call class or the text message class. As such, he lacks standing to seek this discovery from ADT. *Soto, supra.*

C.    *See also* paragraph B(5), *supra*, incorporated herein by reference. Because the information requested cannot be ascertained without extensive analysis, is cumulative and duplicative of information already produced, would result in undue burden, further discovery ought not to be allowed.

### *10. RFP No. 10*[21]

A.    The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is defined to include "any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO);" whatever telephone calls ADT made, or a third party (other than NCO made) has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation

---

[21] All DOCUMENTS, COMMUNICATIONS, and ESI, RELATED TO call scripts, instructions for, or records of PHONE CALLS made by NCO on YOUR behalf.

that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO.

B.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is not limited to telephone calls made to cellular phones with an automatic telephone dialing system, or using an artificial or prerecorded voice. To the extent the request seeks information relating to calls made to residential landlines, as noted above, there is no viable claim in this litigation for debt collection calls to a residential line. *Daniels, supra.*To the extent the request seeks information relating to text messages, there is no evidence of any text message ever having been received by any of the named plaintiffs.

C.     As NCO has already produced its records showing when and how each Plaintiff was contacted with respect to each debt, the request seeks cumulative or duplicative evidence.

### *11. RFP No. 11[22]*

A. The request is not relevant and not likely to lead to the discovery of admissible evidence, as whatever debt collection policies, procedures and practices were used by ADT, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492

---

[22] All DOCUMENTS, COMMUNICATIONS, and/or ESI, RELATED TO DEBT COLLECTION policies, procedures, or practices used by YOU during the RELEVANT TIME PERIOD.

F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels, supra.* The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

B. To the extent the request seeks all documents, communications, and/or ESI related to debt collection policies, procedures and practices used by ADT, the request is irrelevant and overbroad, as literally construed, the request would also encompass means of communication other than by telephone, such as written correspondence, emails, credit reporting, and potentially litigation. Such policies, procedures, and practices have nothing to do with a claim under the TCPA.

C. The request seeks confidential commercial information entitled to protection, irrelevant to the allegations in the Complaint and not likely to lead to the discovery of admissible evidence.

C.     As NCO has already produced its policies, procedures, and practices used to collect debts, the request seeks cumulative, duplicative and irrelevant information.

### *12. RFP No. 12*[23]

A.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is defined to include "any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO);" whatever telephone calls ADT made, or a third party (other than NCO made) has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO.

B.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is not limited to telephone calls made to cellular phones with an automatic telephone dialing system, or using an

---

[23] All DOCUMENTS, COMMUNICATIONS and/or ESI, INCLUDING invoices, RELATED TO NCO billing YOU for DEBT COLLECTION and/or the PHONE CALLS.

artificial or prerecorded voice. To the extent the request seeks information relating to calls made to residential landlines, as noted above, there is no viable claim in this litigation for debt collection calls to a residential line. *Daniels, supra.* To the extent the request seeks information relating to text messages, there is no evidence of any text message ever having been received by any of the named plaintiffs.

C. The request is also not relevant and not likely to lead to the discovery of admissible evidence, as the term "related to ... contracts or agreements" is defined to include "discussing, mentioning, addressing, referring to, analyzing, comprising, underlying, memorializing, describing, or showing the subject indicated;" whatever communications may have been exchanged between ADT and NCO concerning the their contract or agreements has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc.*, 2014 WL 51275, *5. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no

47

claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels, supra*. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

### *13. RFP No. 13*[24]

A.    The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is defined to include "any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO);" whatever telephone calls ADT made, or a third party (other than NCO made) has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation

---

[24] All DOCUMENTS, COMMUNICATIONS, and/or ESI RELATED TO payments made or received by YOU or NCO RELATED TO the PHONE CALLS, INCLUDING invoices, order forms, and receipts of payment.

that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO.

B.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is not limited to telephone calls made to cellular phones with an automatic telephone dialing system, or using an artificial or prerecorded voice. To the extent the request seeks information relating to calls made to residential landlines, as noted above, there is no viable claim in this litigation for debt collection calls to a residential line. *Daniels, supra*. To the extent the request seeks information relating to text messages, there is no evidence of any text message ever having been received by any of the named plaintiffs.

C.     The request is also not relevant because payments made or received by ADT, including invoices, order forms, and receipts of payment, have no possibility to bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc.*, 2014 WL 51275, *5. There is no claim in this litigation that any person or

49

entity communicated with any of the plaintiffs or putative class members, other than NCO; ADT's policies regarding the use of third parties to engage in debt collection. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, supra. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

### *14. RFP No. 14*[25]

A.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is defined to include "any telephone calls YOU made, or that were made by any third-party PERSON acting for YOUR benefit (INCLUDING NCO);" whatever telephone calls ADT made, or a third party (other than NCO made) has nothing to do with the claims against NCO in this litigation or any of NCO's defenses. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. There is no claim in this litigation

---

[25] All DOCUMENTS, COMMUNICATIONS and/or ESI that IDENTIFY the number of PHONE CALLS made by NCO on YOUR behalf.

that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO.

B.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as the term "phone calls" is not limited to telephone calls made to cellular phones with an automatic telephone dialing system, or using an artificial or prerecorded voice. To the extent the request seeks information relating to calls made to residential landlines, as noted above, there is no viable claim in this litigation for debt collection calls to a residential line. *Daniels, supra*. To the extent the request seeks information relating to text messages, there is no evidence of any text message ever having been received by any of the named plaintiffs.

### *15. RFP No. 15*[26]

A.     The request is not relevant and not likely to lead to the discovery of admissible evidence, as whatever ADT's policies are regarding the use of third parties for debt collection, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007); *Hickman v. Taylor*, 329 U.S. 495, 501, (1947); Fed. R. Evid. 401. A claim under the TCPA requires a showing that "(a) defendant made the call (b) to any telephone number assigned to a cellular

---

[26] All DOCUMENTS, COMMUNICATIONS, and/or ESI that IDENTIFY YOUR policies RELATED TO the use of third parties (INCLUDING NCO) for DEBT COLLECTION.

telephone service, and (c) the call was made using any automatic telephone dialing system or an artificial or prerecorded voice." *Daniels v. Comunity Lending, Inc.*, 2014 WL 51275, *5. As such, there is no possibility that the information sought could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be at issue in this case. There is no claim in this litigation that any person or entity communicated with any of the plaintiffs or putative class members, other than NCO; ADT's policies regarding the use of third parties to engage in debt collection. The matters in issue are therefore limited to the method used by NCO of communicating by telephone with putative class members on their cellular phones, and whether prior express consent to do so existed. *Daniels*, *supra*. The information sought by this request also does not in any way relate to issues of numerosity, commonality, typicality, adequacy, predominance or superiority as articulated in the consolidated class action complaint. ECF No. 66 ¶¶ 66-70.

B.    To the extent the request seeks all documents, communications, and/or ESI related to instructions to undertake debt collection, the request is irrelevant and overbroad, as literally construed, the request would also encompass means of communication other than by telephone, such as written correspondence, emails, credit reporting, and potentially litigation. Such means and methods have nothing to do with a claim under the TCPA.

C.     As NCO has already produced its policies, procedures, and practices used to collect debts, the request seeks cumulative, duplicative and irrelevant information.

### *16. RFP No. 16*[27]

A.     There is no evidence in this case that NCO utilized text messaging to communicate with anyone, let alone "proposed class members." Further, calls made to residential telephone lines using an artificial or prerecorded voice attempting to collect a debt have been exempted from the scope of the TCPA. *Daniels, supra*. Plaintiff Molnar consented to be called at both his residence and on his cellular phone. NCO 4902-4915. Plaintiff Molnar thus lacks standing to seek discovery related to this request because he is not a member of the cell phone class, the robo call class or the text message class.

B.     *See also* paragraph B(5), *supra*, incorporated herein by reference. Because the information requested cannot be ascertained without extensive analysis, is cumulative and duplicative of information already produced, would result in undue burden, further discovery ought not to be allowed.

---

[27] All DOCUMENTS, COMMUNICATIONS and/or ESI maintained by YOU that contain INFORMATION RELATED TO PROPOSED CLASS MEMBERS and that were viewed or accessed by NCO.

Dated: August 7, 2014    SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.

/s/ Michael D. Slodov
*Admitted pro hac vice*
Attorney for Defendant
NCO Financial Systems, Inc.

**PROOF OF SERVICE**

I, Erika Vap, hereby certify that:

I am employed in the County of Hillsborough, State of Florida. I am over the age of eighteen years and not a party to the within action. My business address is Sessions, Fishman, Nathan & Israel, LLC, 3350 Buschwood Park Drive, Suite 195, Tampa, FL 33618. On August 7, 2014, I served the following document(s): Defendant NCO Financial Systems, Inc.'s COMBINED MEET AND CONFER REQUEST, OBJECTIONS TO SUBPOENA TO THE ADT CORPORATION, MOTION TO QUASH AND FOR PROTECTIVE ORDER on the following interested parties in this action By Email at the email address noted below and by ordinary U.S. Mail, postage prepaid (I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at 3350 Buschwood Park Drive, Suite 195, Tampa, FL 33618 in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit):

Beatrice Skye Resendes
Ronald Marron
Alexis Marie Wood
Kas L. Gallucci
Law Offices of Ronald A. Marron APLC
651 Arroyo Drive
San Diego, CA 92103
Email: skye@consumersadvocates.com
Email: ron@consumersadvocates.com
Email: alexis@consumersadvocates.com
Email: kas@consumersadvocates.com

Douglas J. Campion
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Email: doug@djcampion.com

Benjamin Richman
Christopher L. Dore
Jay Edelson
Rafey S. Balabanian
Sean Patrick Reis
Mark S. Eisen
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Email: brichman@edelson.com
Email: cdore@edelson.com
Email: jedelson@edelson.com
Email: rbalabanian@edelson.com
Email: sreis@edelson.com
Email: meisen@edelson.com

Keith J. Keogh
KEOGH LAW, LTD
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Email: keith@keoghlaw.com


Debbie P Kirkpatrick
James K. Schultz
Bryan C. Shartle
Sessions Fishman Nathan and Israel
1545 Hotel Circle South, Suite 150
San Diego, CA 92108
&
55 West Monroe Street
Suite 1120
Chicago, IL 60603
&
3850 North Causeway Boulevard
Suite 200
Metairie, LA 70002-7227
Email: dpk@sessions-law.biz
Email: jschultz@sessions-law.biz
Email: bshartle@sessions-law.biz

I, Erika Vap, hereby further certify that:

I served the following document: Defendant NCO Financial Systems, Inc.'s COMBINED MEET AND CONFER REQUEST, OBJECTIONS TO SUBPOENA TO THE ADT CORPORATION, MOTION TO QUASH AND FOR PROTECTIVE ORDER on the following interested party in this action by Federal Express at the address noted below:

The ADT Corporation
1501 Yamato Road
Boca Raton, Florida 33431

I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the bar of this Court, at whose direction the service was made, and that the foregoing is true and correct.

Executed on August 7, 2014, in Tampa, Florida.

Erika Vap