Douglas J. Campion (SBN 75381)
doug@djcampion.com
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Tel: 619.299.2091
Fax: 619.858.0034

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *pro hac vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *pro hac vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

(additional counsel on signature block)

*Counsel for Plaintiffs and the Putative Classes*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JEFFREY MOLNAR, WESLEY THORNTON, AILEEN MARTINEZ, CHIQUITA BELL, TEYIA BOLDEN, and ANTOINETTE STANSBERRY, individually and on behalf of all others similarly situated,

    *Plaintiffs*,

    *v.*

NCO FINANCIAL SYSTEMS, INC., a Pennsylvania Corporation,

    *Defendant*.

Case No. 3:13-cv-00131-BAS-JLB

**PLAINTIFF WESLEY THORNTON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**

Judge: Hon. Cynthia A. Bashant
Magistrate: Hon. Jill L. Burkhardt

Hearing Date:     March 23, 2015
Courtroom:          4B

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

    A.  NCO Used Autodialers and Prerecorded Voices to Call the Classes' Cell Phones Without Consent. ........................................................................ 2

    B.  Members of the Classes Will Be Easily Ascertained Through NCO's Records. ............................................................................................... 4

    C.  This Court Has Recently Approved the Use of Automated Computer Scripts Like the One Plaintiff Proposes Here to Identify Class Members from a Defendant's Records. ..................................................................... 6

    D.  Like Thousands of Other Class Members, Wesley Thornton Received Calls from NCO on His Cellular Telephone, Made with Automatic Telephone Dialing Systems and Featuring an Artificial or Prerecorded Voice. ............... 7

ARGUMENT ....................................................................................................... 7

  I.  The Proposed Classes and Standard for Certification. ........................................ 7

  II.  The Proposed Classes are Ascertainable. ...................................................... 10

  III.  The Proposed Classes Satisfy Rule 23(a)'s Requirements. ............................. 12

    A. The proposed Classes consist of thousands of individuals, and are therefore sufficiently numerous. ...................................................................... 12

    B. The proposed Classes satisfy the commonality requirement. ............................ 13

        1.  Whether NCO's Dialers Satisfy the ATDS Definition is a Common Question With a Common Answer. ............................................... 14

        2.  Whether NCO Used an Artificial or Prerecorded Voice to Call the Robocall Class is a Common Question. ............................................. 15

        3.  Whether NCO Can Demonstrate Consent is a Common Question. ......... 15

        4.  Whether the Classes suffered the same injuries is a common question with a common answer. ................................................................. 17

C. Plaintiff's claims are typical of the claims of the Classes. ............................... 17

D. Thornton will fairly and adequately protect the Classes' interests..................... 18

IV.  The Proposed Class Satisfies Rule 23(b)(3)'s Requirements.............................. 20

A. Common questions of law and fact predominate...................................... 20

B. A class action is a superior method for adjudicating the Class members' claims.

.................................................................................... 23

V.   The Court Should Appoint Plaintiff's Counsel as Class Counsel. ....................... 24

**CONCLUSION**........................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Agne v. Papa John's Intern., Inc.*,
   286 F.R.D. 559 (W.D. Wash. 2012)..................................................................... 16

*Akaosugi v. Benihana Nat. Corp.*,
   282 F.R.D. 241 (N.D. Cal. 2012) .......................................................................... 8

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014)......................................................................... 10

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010)................................................................................ 9

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014) ..................................................................... 2, 20

*Bridgeview Health Care Ctr. Ltd. v. Clark*,
   No. 09-cv-5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) ............................ 8

*Cabrera v. Bell, LLC*,
   No. 12-cv-61390-KMW, Dkt. 163 (S.D. Fla. Nov. 26, 2014)............................. 14

*CE Design v. Beaty Const., Inc.*,
   No. 07-cv-3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009)............................... 18

*Celano v. Marriott Int'l, Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007) ....................................................................... 13

*Connelly v. Hilton Grand Vacations Co., LLC*,
   294 F.R.D. 574 (S.D. Cal. 2013)........................................................................... 9

*Connelly v. Hilton Grant Vacations Co., LLC*,
   No. 12-cv-599, 2012 WL 2129364 (S.D. Cal. June 11, 2012............................. 15

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001)............................................................................ 24

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)................................................................................ 9

*Erica P. John Fund, Inc. v. Halliburton*,
   131 S. Ct. 2179 (2011) ................................................................................... 9, 21

*Gay v. Waiters' & Dairy Lunchmen's Union*,
   549 F.2d 1330 (9th Cir. 1977)............................................................................ 13

*Gen. Tel. Co. of S.W. v. Falcon*,
   457 U.S. 147 (1982) ........................................................................................... 13

*Grant v. Capital Mgmt. Servs., L.P.*,
    449 F. App'x 598 (9th Cir. 2011) ........................................................ 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................. 13, 17, 19, 20

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................... 17

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ......................................................... 20

*Ira Holtzman, C.P.A. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ............................................................. 2, 9

*Knutson v. Schwan's Home Serv., Inc.*,
    No. 12-cv-964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ................... 11, 22, 23

*Kramer v. Autobytel, Inc.*,
    759 F. Supp. 2d 1165 (N.D. Cal. 2010) ............................................... 20

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014) ........................... 2, 9, 15, 16, 20, 22

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
    640 F.3d 72 (3rd Cir. 2011) ............................................................... 23

*Lardner v. Diversified Consultants, Inc.*,
    No. 13-cv-22751, 2014 WL 1778960 (S.D. Fla. May 1, 2014) ................ 14

*Lee v. Stonebridge Life Ins. Co.*,
    289 F.R.D. 292 (N.D. Cal. 2013) .................................................. 2, 9, 20

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ............................................................. 19

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ................................................. 20

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 2013) ..................... 18

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) ................................................. 10, 23, 24

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................. 21

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ........................................................... 14

*Moeller v. Taco Bell Corp.*,
  No. 02-cv-5849, 2004 WL 5669683 (N.D. Cal. Dec. 7, 2004)...............................8

*Oshana v. Coca-Cola Bottling Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005) ....................................................................10

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008)..........................................................................14

*Pierce v. County of Orange*,
  526 F.3d 1190 (9th Cir. 2008) ........................................................................20

*Ramirez v. Trans Union, LLC*,
  301 F.R.D. 408 (N.D. Cal. 2014) ....................................................................24

*Robbins v. Coca-Cola-Company*,
  No. 13-cv-132, 2013 WL 2252646 (S.D. Cal. May 22, 2013) .............................15

*Santillan v. Ashcroft*,
  No. 04-cv-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) ............................10

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009).....................................................................14, 19

*Savanna Group, Inc. v. Trynex, Inc.*,
  No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013).....................................8

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) ....................................................................10

*Silbaugh v. Viking Magazine Servs.*,
  278 F.R.D. 389 (N.D. Ohio 2012)..........................................................16, 17, 22

*Stemple v. QC Holdings, Inc.*,
  No. 12-cv-1997, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) 2, 6, 9, 10, 12, 13, 15,
  17, 18, 23, 24

*United Steel v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010)..........................................................................21

*Valentina v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996)..........................................................................23

*Vigus v. Southern Riverboat/Casino Cruise, Inc.*,
  274 F.R.D. 229 (S.D. Ill. 2011).........................................................................9

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009)..........................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541(2011) ..............................................................9, 13, 14, 15, 17

*Whitten v. ARS Nat. Servs., Inc.*,
    No. 00-cv-6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) .............................. 20
*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................................ 21, 23
*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .............................................................................. 20

**Rules**

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 19

Fed. R. Civ. P. 23(b)(3) .................................................................................... 9, 20

Fed. R. Civ. P. 23(b)(3)(A)–(D) ......................................................................... 23

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................... 8

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ......................................................................... 25

**Statutes**

47 U.S.C. § 227(b)(1)(A) ..................................................................................... 15

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................... 18, 21

47 U.S.C. §§ 227(b)(3)(A–C) ............................................................................. 17

**Other Authorities**

8 Newberg on Class Actions, § 24.25 (4th ed. 2013) ....................................... 17

## **INTRODUCTION**

This case is about a debt collector that for many years has paid little attention to the proscriptions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") when making its debt-collection calls. Enter Defendant NCO Financial Systems, Inc. ("NCO"), one of the world's most notorious debt collectors when it comes to its aggressive calling practices. In this case, Plaintiff Wesley Thornton alleges that NCO placed numerous automated and often times prerecorded calls to his cellular phone without his consent. But, as Thornton is just one of thousands of individuals who received these unlawful calls, he brought this case as a putative class action, and he now seeks certification on behalf of two classes of similarly situated individuals. The first comprises purported debtors who NCO called on their cell phones using an automatic telephone dialing system. The second comprises purported debtors who NCO called on their cell phones with an artificial or prerecorded voice. Certification of those two classes is appropriate because the case will answer in one stroke whether NCO repeatedly violated the TCPA through the making of these calls.

Critically, the path to certification here is paved through NCO's records. Those records show every number NCO called, the equipment used to make those calls—including whether the call was made with an autodialer or prerecorded voice—and whether NCO had any indicia of consent to call those numbers. Using NCO's records, Plaintiff has devised an automated and administratively feasible process of identifying class members by querying the records for the above information. Applying that process to the representative sample of the call records produced by NCO in discovery shows that Rule 23's requisites for certification are satisfied. Indeed, the records establish that the two classes have hundreds of thousands of members ("numerosity"), all of whom are in an identical evidentiary position (given that NCO's records establish for each of them the number(s) at which they were called, how the number was called, and whether NCO was authorized to call them at that number) ("commonality" and "predominance"). Moreover, Thornton's circumstances are no different than that of any

other member of the Classes, and he and his counsel have steadfastly sought to vindicate the rights of everyone ("typicality" and "adequacy"). And, given the nature of the claims and the damages suffered by each class member relative to the resources required to effectively litigate the claims, the class action mechanism is quite clearly the superior method for adjudicating this case ("superiority").

It is noteworthy that this Court recently found class certification appropriate under strikingly similar circumstances in another TCPA case where the plaintiff proposed an automated process for querying the defendant's records to identify class members. *See e.g., Stemple v. QC Holdings, Inc.*, No. 12-cv-1997, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014). This Court's *Stemple* decision is consistent with the case law holding that "[c]lass certification is normal in litigation under [47 U.S.C.] § 227." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). The opinions are legion. *See*, *e.g.*, *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014). Plaintiff respectfully requests that the Court enter an Order granting class certification.

## BACKGROUND

**A.**     ***NCO Used Autodialers and Prerecorded Voices to Call the Classes' Cell Phones Without Consent.***

From January 16, 2009 to the present (the "Class Period"), NCO made millions of telephone calls to collect over 100 million debts purportedly owed to its clients. (*See* Defendant NCO Financial Systems, Inc.'s Responses to Plaintiffs' Requests for Production of Documents, Set Four, Ex. 1,[1] Resp. No. 43.) ███████████████

███████████████████████████████

███████████████████████████████████

---

[1]     Throughout this memorandum, all references to exhibits (e.g., "Ex. 1") refer to the exhibits attached to the Declaration of Kas L. Gallucci ("Galluci Decl."), filed contemporaneously herewith.

1    ████████████████████████████████████████ (*See* Transcript of the

2    Rule 30(b)(6) Deposition of Greg Stevens ("Stevens Dep."), Ex. 2, at 76:10–77:3.)

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ███████████████████████████████████████████. (*Id.* at 78:1–80:20.)

6            Throughout the Class period, ████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████ (*id.* at 17:8–18:11, 188:17–189:10)—yet it failed to

9    take any meaningful steps to comply.[2] As discovery has shown, the ultimate result is

10   that NCO entered hundreds of thousands of cell phone numbers into its systems, failed

11   to identify them as cell phones, and called them repeatedly using its autodialers and/or

12   prerecorded voices without the recipients' consent. (*See* Gallucci Decl. ¶¶ 14–17.)

13          Over time—after it was sued for various violations of the TCPA[3]—██████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ███████████████████████ (Stevens Dep. at 188:17–189:10.) But because NCO's

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ███████████████████████████████████████████. (*Id.* at 191:13–

20   192:13; Exs. F and G to Hansen Decl.; Gallucci Decl. ¶¶ 14–17.)

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ─────────────────

24   [2]      For example, ████████████████████████████████████████████████████████████████████████.

25   (Stevens Dep. at 188:17–189:5.)

26   [3]      *See, e.g.*, *Watson v. NCO Group, Inc.*, No. 06-cv-1502 (E.D. Pa.); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-cv-1414 (S.D. Cal.); *Donnelly v. NCO Fin. Sys., Inc.*, No. 09-cv-2264 (N.D. Ill.).

27   [4]      Scrubbing refers to the process whereby NCO uses third-party vendors to

28   determine whether specific phone numbers are assigned to cellular telephones. (Stevens Dep. at 45:20–46:9.)

3

1   ██████████████████████ (Stevens Dep. at 239:14–24.) Each of those dialers

2   functioned in a substantially identical manner, were all used by NCO to automatically

3   call lists of consumers without human involvement, and often delivered prerecorded

4   messages to the call recipients. (*Id.* at 255:5–11, 258:25–259:13, 263:24–265:3; *see also*

5   Rule 26(a)(2) Expert Disclosure, Written Report, and Declaration of Jeffrey A. Hansen

6   ("Hansen Rpt."), Ex. 4, at ¶¶ 13–26.)

7   **B.   *Members of the Classes Will Be Easily Ascertained Through NCO's Records.***

8        Despite its unlawful calling practices, to its credit NCO kept detailed records of

9   the calls it made. ██████████████████████████████

10  █████████████████████████. (Stevens Dep. at 148:7–

11  24.) Relevant here, its records identify each of the criteria necessary for determining

12  membership in one (or both) of the proposed Classes—i.e., which calls (i) were made to

13  cell phones, (ii) without any evidence of consent, and (iii) either using one of NCO's

14  ███ dialers, or featuring a prerecorded voice delivered by NCO's ██████ dialer.

15       ***First***, NCO's records allow for easy identification of the numbers assigned to cell

16  phones at the time they were called. As explained by Plaintiff's expert, and even

17  recognized by NCO's own expert, NCO's records can be cross-referenced against

18  commercially available databases to determine which calls were made to numbers

19  assigned to cellular accounts at the time they were called. (Hansen Decl. ¶¶ 29–30;

20  Expert Report of Ken Sponsler ("Sponsler Rpt."), Ex. 5 at 15 ████████████

21  ███████████████████████████████████████

22  ████████████████████████

23       ***Second***, NCO's records show which calls were made using its autodialers and

24  which featured certain prerecorded voices. That is, ████████████████

25  ██████████████████, (*see*, *e.g.*, Fact Sheet: Wes Thornton, Ex. 6; NCO's

26  Representative Call Sample, Ex. 7; Stevens Dep. at 159:3–161:22), ████████

27  ██████████████████████████████████████

28  ██████. (*See*, *e.g.*, Ex. 6 at 2–5; Ex. 7 at 1–2; Stevens Dep. at 172:11–175:14.)

**Third**, because ███████████████████████████████████ ████████████████████████████████████, its records can easily be queried to identify those consumers for whom no such consent was provided. (*See* NCO Collector Training Manual April 2013, Ex. 8; *see also* NCO Collector Training Manual 2008, Ex. 9. ████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████.")) (emphasis added). That is, NCO's records on their face clearly state whether consent to call a particular number was obtained, and for those numbers where it wasn't, they so state that as well. (*See* Ex. 6 ████████████████████████████████████████ ███████); Ex. 7 ████████████████████████).)[5]

In addition to identifying these objective criteria for determining class membership, Plaintiff has also prepared automated computer scripts that systematically apply those criteria to NCO's records to identify Class members. Specifically, Plaintiff's scripts: (1) identify the calls placed by NCO's dialers or with prerecorded voices during the Class Period, (2) remove from the remaining records any calls for which NCO has any indicia (or evidence) of consent,[6] and (3) identify only those calls

---

[5]    For this reason, the proposed Classes are limited to those individuals for whom NCO has no evidence or indicia of consent. (*See* Gallucci Decl. at ¶¶ 2–13 (listing indicia of consent in NCO's records, and defining Classes by reference to them).) Should further discovery or briefing identify any additional indicators of consent not presently encompassed by Plaintiff's class definition and accompanying script for identifying Class members, the definitions and script could be easily modified to account for them. (Hansen Decl. ¶¶ 22–28.)

[6]    The scripts eliminate those calls for which NCO could assert consent by a three-step process. First, it excludes calls made to the first number associated with any account (as it is likely that number was provided to the creditor in connection with the debt, which would mean the creditor had consent to call that number). (Hansen Decl. ¶ 11.) Second, it scans the "████████████████" field for any number that NCO explicitly documented consent to call. (Hansen Decl. ¶ 14.) Third, it scans the ████████████ ███████████" field—entered by the NCO employee or dialer system that made the call— and the ██████████████" field for any notation suggestive of consent, and excludes any associated phone number. (Hansen Decl. ¶¶15–16; Gallucci Decl. ¶ 9.).) Finally,

made to cellular phones. (Hansen Decl. ¶¶ 8–30.)

**C.**   ***This Court Has Recently Approved the Use of Automated Computer Scripts Like the One Plaintiff Proposes Here to Identify Class Members from a Defendant's Records.***

This Court's decision in *Stemple*, 2014 WL 4409817, supports Plaintiff's proposed process for identifying the members of the Classes. In *Stemple*, the defendant placed calls to 105,805 unique cell phone numbers, but only some of which belonged to class members. *Id*. Specifically, the proposed class consisted of individuals who were called by the defendant (i) using an ATDS, (ii) after their numbers appeared in the reference fields of certain loan applications. *Id.* at *7–8. Complicating the identification of class members was the fact that some of the individuals called after being listed as references had separately consented to the receipt of such calls. *Id.*

There, as here, the plaintiff sought the assistance of a computer forensics expert to identify the class members from within the defendant's records. *Id.* at *2–3. The expert proposed the use of a computer program to cross-reference the list of all numbers the defendant called with a separate list of numbers identified only in the relevant reference fields, and also with the list of call recipients who had separately given their consent to be called. *Id.* at *3. Over the defendant's objections, this Court ultimately held that the proposed class was "readily ascertainable" because the expert's program could isolate only those phone numbers (and individuals) that actually fell within the proposed class definition. *Id.* at *7.

As described above, the computer scripting process Plaintiff proposes here is

---

because of limitations in the sample provided by NCO, Hansen's declaration identifies three additional restrictions within the Class definition that could be easily incorporated into the scripts. First, because NCO identifies the creditor associated with each account, the script could identify NCO call recipients who held Qualifying Debts. (Hansen Decl. ¶ 25.) Second, NCO's records could easily be queried to exclude any calls made to numbers identified as being "typed-in" in the "source" column of NCO's records, meaning that an NCO call representative would have typed the phone number into NCO's database as he or she received it. (Hansen Decl. ¶ 27; Gallucci Decl. ¶ 7.) Third, NCO's records could be queried to exclude calls made to numbers associated with certain "Result Codes" potentially indicative of consent. (Hansen Decl. ¶ 26.)

strikingly similar to the one endorsed by this Court in *Stemple*. With that practically identical process in place, it simply cannot be said that the proposed Classes in this case are any less ascertainable than they were in *Stemple*. (*See* Section II, *infra*.)

**D.**   ***Like Thousands of Other Class Members, Wesley Thornton Received Calls from NCO on His Cellular Telephone, Made with Automatic Telephone Dialing Systems and Featuring an Artificial or Prerecorded Voice.***

Finally, and as NCO's records reflect, Thornton is one of the thousands of individuals who received automated calls from NCO, on his cell phone, without his consent. The calls began in September 2008 and continued regularly through October 2011. (*See generally* Ex. 6.) Thornton never provided consent to be called on his cell number, (*See* Transcript of Deposition of Wesley Thornton ("Thornton Dep."), Ex. 10, at 30:7–11, 79:4–80:2), nor does NCO have any record of consent. (*See generally* Ex. 6; *see also* Defendant NCO Financial Systems, Inc.'s Responses to Plaintiff Wesley Thornton's Interrogatories, Ex. 11, at Resp. No. 4; Stevens Dep. at 209:22–211:12.)

## ARGUMENT

**I.**   **The Proposed Classes and Standard for Certification.**

Plaintiff seeks certification of the following two Classes under Rules 23(a) and (b)(3):[7]

> **Autodialer Class:** Any person in the United States who NCO's records identify as owing a Qualifying Debt,[8] and to whom NCO placed a call, since January 16, 2009, that was made: (1) to a Qualifying Cellular Telephone Number,[9] (2) using any of NCO's dialers.

---

[7]   Excluded from the Classes are the following persons: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

[8]   A "Qualifying Debt" is any debt sent to NCO for collection, other than those debts originating with any of the following entities: Lester E. Cox Medical Centers Cox-Monett Hospital, Inc. ("Cox Health"); Houston Methodist Hospital; All Children's

> **Robocall Class:** Any person in the United States who NCO's records identify as owing a Qualifying Debt, and to whom NCO placed a call, since January 16, 2009, that was made: (1) to a Qualifying Cellular Telephone Number, (2) using the LiveVox dialer, and (3) featuring an artificial or prerecorded voice.[10]

Rule 23 provides that "[a] class action may be maintained if two conditions are met— the suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it must also fit into one

---

Hospital, Inc.; North Arkansas Regional Medical Center; AT&T, Inc.; Capital One Financial Corporation; Eligibility Patient Advocacy Liaison Services; Freeman Health System, Mercy Medical Center; Mount Sinai Medical Center; Oregon Health and Science University Hospitals and Clinics; Riverside Community Hospital; UAB Medicine; UAMS Medical Center; Nationwide Mutual Insurance Company; General Financial Solutions; UHS Development; University of Washington Medicine; the federal student loan program; Sprint/United Management Company; Bank of America Corporation; TD Bank, N.A.; or PNC Bank, N.A.

[9]    A "Qualifying Cellular Telephone Number" is any cellular telephone number (i) that is not the first telephone number to be called regarding any account in NCO's records, and (ii) that does not have "type-in" listed in the "source" field of NCO's account notes, and (iii) that does not have calls to it associated with *any* of the Action Codes, Result Codes, Transaction Comments, or "Current Consent" entries listed in Paragraphs 8–12 of the Gallucci Declaration. (*See* Gallucci Decl. ¶¶ 8–12.)

[10]    The Class definitions here have been *narrowed* from the definitions contained in Plaintiff's Consolidated Class Action Complaint in light of the evidence adduced in discovery to date. (*See* Dkt. 66, ¶ 65.) Altering a proposed class definition in light of discovery obtained is well-established practice supported by the courts and contemplated by Rule 23. *See* Fed. R. Civ. P. 23(c)(1)(C) (stating that an order certifying a class "may be altered or amended before final judgment"); *see also*, *Moeller v. Taco Bell Corp.*, No. 02-cv-5849, 2004 WL 5669683, at *1 (N.D. Cal. Dec. 7, 2004); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013) (finding certification of a TCPA class other than that pled in complaint as "consistent with Rule 23," and noting that it should "not forestall the Court's class certification inquiry"); *see also Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09-cv-5601, 2011 WL 4628744, at *2 (N.D. Ill. Sept. 30, 2011) (holding the same in another TCPA action); *Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012). To the extent the Court certifies the Classes proposed (or a modified versions of them), the Court should "invite[ Plaintiff] to amend [his] complaint to reflect the new class definition." *Savanna Group, Inc.*, 2013 WL 66181 at *3.

Additionally, while Plaintiff's Consolidated Complaint asserted claims on behalf of a class of individuals who received unlawful text messages from NCO, discovery has shown a lack of evidence to support bringing such claims on a class-wide basis.

of the three categories described in subdivision (b)." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). For its part, Rule 23(b)(3) requires a plaintiff to show that common questions of law or fact predominate over any issues affecting only individual members of the proposed class, and that maintaining the lawsuit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011). Further, courts only consider the merits of a plaintiff's claims insofar as they overlap with the certification requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011) ("*Dukes*"); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

Notably, courts throughout the country, including this one, have regularly certified classes asserting TCPA claims like those at issue here. *See*, *e.g.*, *Stemple*, 2014 WL 4409817 (certifying TCPA message class after ascertainability and commonality showing based on expert's computerized cross-referencing program); *Lee*, 289 F.R.D. 292 (TCPA text message class); *Kristensen*, 12 F. Supp. 3d 1292 (TCPA text message class); *Birchmeier*, 302 F.R.D. 240 (TCPA prerecorded voice class); *see also Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [47 U.S.C.] § 227," because "the main questions, such as whether a given [communication] is an advertisement, are common to all recipients.").

In those rare instances where TCPA classes have not been certified, individual issues of consent have predominated. For example, certification has been denied where (unlike here) the plaintiff fails to propose a viable method for avoiding individual inquiries into the varied forms and scope of class members' consent to be called. *See*, *e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013); *Vigus v. Southern Riverboat/Casino Cruise, Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. 2011) (denying certification where proposed class was "not a list of homogenously unconsenting recipients."). By contrast, when (as in this case) the proposed class definition "weed[s] out those individuals who may have consented to be called," "the

Court will not have to inquire as to whether each putative class member may be subject to an independent consent defense," and certification is typically granted. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013).

## II.   The Proposed Classes are Ascertainable.

As an initial matter and "[t]hough not explicitly stated in Rule 23, courts have held that the class must be adequately defined and clearly ascertainable . . . ." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014) (collecting cases). "Although the exact identities of the class members need not be specified at the class certification stage, 'the proposed class must be sufficiently definite in order to demonstrate that the class actually exists.'" *Stemple*, 2014 WL 4409817, at *4 (quoting *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005)); *see also Santillan v. Ashcroft*, No. 04-cv-2686, 2004 WL 2297990, at *3 (N.D. Cal. Oct. 12, 2004). Put differently, it must be "administratively feasible for the court to determine whether a particular individual is a member." *Algarin*, 300 F.R.D. at 454 (internal citations and quotations omitted); *see also  Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679 – 80 (S.D. Cal. 1999) ("[A]n identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind."). Here, the proposed Classes are ascertainable because they are defined by objective criteria: as to the Autodialer Class, NCO's records can be queried to identify individuals (i) NCO identifies as holding Qualifying Debts, and who received calls (ii) on Qualifying Cellular Telephone Numbers, (iii) made by any of NCO's ▮ dialers or featuring a prerecorded voice. (Hansen Decl. ¶¶ 8–28.)

***First***, NCO's records tie each call made, and its associated number, to a specific debt, (*see generally*, *e.g.* Exs. 6, 7), meaning that NCO's records can be queried to identify accounts related to Qualifying Debts. (Hansen Decl. ¶ 23.)

***Second***, NCO's records specify the date and time of each call, meaning that NCO's records can be queried to identify calls made within the Class period. (*See generally* Exs. 6, 7; Hansen Decl. ¶ 12.)

***Third***, the Parties' experts agree that NCO's records can be cross-referenced (in an automated fashion) against commercially available databases to identify the numbers NCO called that were assigned to cellular accounts. (Hansen Decl. ¶¶ 29–30; Sponsler Rprt. at 15 (███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████").) From there, Plaintiff's computer script can, again in an automated fashion, use the identifying criteria set forth in the Class definitions to isolate those individuals called on Qualifying Cellular Telephone Numbers. (Hansen Decl. ¶¶ 8–28.)

***Fourth***, NCO's records uniformly identify which, if any, dialer was used to make each call, meaning that the Autodialer Class can easily be limited to those individuals who received calls placed by one of NCO's ███ autodialers. (Hansen Decl. ¶ 17.) The same process may be used with respect to the Robocall Class, but rather than identifying calls made using any of the five dialers, the computer script would identify any calls documented as having delivered a prerecorded voice message with the LiveVox dialer. (Hansen Decl. ¶¶ 18–19.) *See also Knutson v. Schwan's Home Serv., Inc.*, No. 12-cv-964, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013) ("Whether a customer received an autodialer or artificial/prerecorded call may be determined objectively.").

***Fifth***, Plaintiff's proposed scripting process will eliminate from the proposed Classes any individual for which NCO's records include any indicia of consent to be called—i.e., any number that is: (a) the first number called in association with any account, (b) associated with any indicator of consent in the "Current Consent" column of NCO's records, (c) associated with any "Action Code" indicative of possible consent, *or* (d) associated with any "Transaction Comment" suggestive of consent.[11] (Hansen Decl. ¶¶ 8–16.) Again, Plaintiff's proposal in this regard is fundamentally the

---

[11]     And, as explained in the Hansen declaration, the script could easily be refined to identify and limit the class list to those debtors called regarding a Qualifying Debt, to exclude any number listed as being "typed-in," and to exclude any number associated with a "Result Code" suggestive of consent. (Hansen Decl. ¶¶ 26, 27.)

same as the process approved by this Court in *Stemple*. As in *Stemple*, NCO contends that some purported debtors consented to receive its calls and that only a review of each of its millions of debtor accounts can determine whether consent was given or not. 2014 WL 4409817, at *2–3. But, just as the plaintiff did in *Stemple*, Plaintiff has created scripts capable of automatically culling NCO's database of account files to identify only those individuals for whom NCO has no record of consent whatsoever. *Id.* So no different than in *Stemple*, the automated process that Plaintiff proposes here makes identifying Class members administratively feasible, and thus, the proposed Classes are readily ascertainable. *Id.* at *8.[12]

## III. The Proposed Classes Satisfy Rule 23(a)'s Requirements.

Next, the proposed Classes also satisfy each of Rule 23(a)'s requisites to certification. As explained below, the proposed Classes include, at a minimum, thousands of individuals (numerosity) who share several common legal and factual questions that can be answered for the Classes as a whole based upon common proofs (commonality). Further, Plaintiff's claims are typical of those of the other members of the Classes, and he and his counsel are more than adequate to represent the interests of the absent members of the Classes.

### A. The proposed Classes consist of thousands of individuals, and are therefore sufficiently numerous.

First, Rule 23(a)(1) requires that a class be so numerous that "joinder of all members [would be] impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Stemple*, 2014 WL 4409817, at *4 (internal quotations omitted).

---

[12]     As a result, Plaintiff will, at the appropriate time and with the assistance of a professional class action notice administrator, be able to use Defendant's records to identify the members of the Classes and effectuate direct notice to them. In the Class notice, Plaintiff will also, consistent with the relevant ethical rules, disclose the terms of the fee-sharing arrangement among plaintiffs' counsel.

Here, a review of the representative call sample produced by NCO shows that each Class likely consists of, at a minimum, thousands of members. That is, applying the Class criteria for class membership to the sample produced by NCO shows that, within the sample itself, there are 39 likely members of the Autodialer Class, and 12 likely members of the Robocall Class. (Hansen Decl. ¶ 30.)

Further, using the results of the sample and extrapolating on NCO's records as a whole, which consist of roughly one billion calls made regarding over 100 million accounts, (Ex. 1 at Resp. No. 43), the Autodialer Class grows to hundreds of thousands of individuals and the Robocall Class grows to ten of thousands of individuals. Thus, there is no question that classes of these sizes are sufficiently numerous. *See Stemple*, 2014 WL 4409817 at *4 ("Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer.") (quoting *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007)); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977) (noting that a "judge may consider reasonable inferences drawn from the facts before him . . . [to] determin[e] that the class is sufficiently numerous as to make joinder impractical.").

**B. The proposed Classes satisfy the commonality requirement.**

Next, Rule 23(a)(2) requires that the proponent of certification establish the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982)), however, "[a]ll questions of law and fact need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* The common contention must be of such a nature that it is capable of class-wide resolution, and "determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Moreover, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

Here, there are multiple common questions that will, in turn, "generate common *answers* apt to drive the resolution of the litigation . . . ." *Dukes*, 131 S. Ct. at 2551.

### 1. Whether NCO's Dialers Satisfy the ATDS Definition is a Common Question With a Common Answer.

First, each Autodialer Class member must answer the common question of whether the NCO called them using an ATDS. The evidence adduced to date confirms that the Court will be able to uniformly determine, on a class-wide basis, whether NCO's dialing systems meet the definition of an ATDS. Indeed, NCO used the same five dialers to make calls to each member of the Autodialer Class (i.e., CRS Mercury, Aspect, Ontario Systems Guaranteed Contacts, LiveVox, and SoundBite), and each of dialer functioned in a substantially identical manner. (*See* Stevens Dep. Tr. at 58:4–6, 255:5–11, 258:25–259:13, 263:24–265:3; *see also* Hansen Rpt. at ¶¶ 13–26.) Because each Autodialer Class member received calls using the same dialing equipment, with the same functionality, the Court's determination as to whether NCO's dialers meet the statutory definition of an ATDS is a common question for the Class that will be resolved by consideration of the same operative facts and evidence. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also Lardner v. Diversified Consultants, Inc.*, No. 13-cv-22751, 2014 WL 1778960, at *5 (S.D. Fla. May 1, 2014) (finding LiveVox to be "an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list."); *Cabrera v. Bell, LLC*, No. 12-cv-61390-KMW, Dkt. 163 at *6–7 (S.D. Fla. Nov. 26, 2014) (denying defendant debt collector's motion for summary judgment and noting that "every court to consider the issue has found that Livevox is an automatic telephone dialing system under the

TCPA.") (collecting cases).

      2.    <u>Whether NCO Used an Artificial or Prerecorded Voice to Call the Robocall Class is a Common Question.</u>

Similarly, the primary common issue for the Robocall Class is whether NCO caused calls featuring artificial or prerecorded voices to be made to Plaintiff and the Class members. The answer is undoubtedly "yes." It is undisputed that NCO used the same automated ███████ system to call each Robocall Class member. (*See* Hansen Decl., Ex. G.) Indeed, NCO's own call records show that these calls were documented by the ███████ system itself with several notations.[13] (*Id.*; *see also* Stevens Dep. Tr. at 266:7–22.) Thus, because each Robocall Class member was confronted with a call featuring an artificial or prerecorded voice that was delivered through the same automated dialing system, the Court's determination of whether prerecorded calls were placed to the Robocall Class will be resolved "in one stroke." *Dukes*, 131 S. Ct. at 2551.

      3.    <u>Whether NCO Can Demonstrate Consent is a Common Question.</u>

Next, whether NCO obtained prior express consent to call Plaintiff and the other members of the Classes is also a common question. Indeed, the limiting criteria included in the definitions of the proposed Classes permits the question to be answered uniformly in the negative. *See* 47 U.S.C. § 227(b)(1)(A).[14]

---

[13]    Specifically, those notations included "████████████████████████████████████████████████████████████████████████████████████ (*Id.*; *see also* Stevens Dep. Tr. at 266:7–22.)

[14]    As this Court has noted, "[t]here appears to be some confusion in the Ninth Circuit as to whether the lack of prior express consent must be proven by the plaintiff or whether it is an affirmative defense that must be proven by the defendant." *Stemple*, 2014 WL 4409817, at *6. While the weight of the authority supports the view that it is an affirmative defense on which NCO would bear the burden of proof, *see Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011); *Robbins v. Coca-Cola-Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013) (quoting *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12-cv-599, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012)), the answer to the question is ultimately irrelevant in this case—the proposed Classes include only those individuals identified as providing no evidence of consent whatsoever, as NCO has wholly failed to produce *any* evidence of consent by any of them. *See Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts

That is, because NCO has "systemic controls" in place to ensure that it recorded any consent given to call a cellular number, (*see* Ex. 8; Ex. 9), any number associated with such indicia of consent is identifiable, and is not included within the definition of either Class. (Gallucci Decl. ¶¶ 2–13.) Likewise, because the provision of a telephone number to a lender can be construed as consent to be called regarding outstanding debts, the Class definitions exclude the first numbers associated with any account (i.e., the only numbers that could have been provided to a lender in connection with an original financing document). (*Id*.) Further, because NCO may argue that it had consent to call any number provided directly to it by a consumer, Plaintiff has excluded from the Classes any calls made to numbers listed as "type[d]-in" by NCO's call agents. (Gallucci Decl. ¶ 7; Stevens Dep. at 130:18–132:10.) And, because certain of NCO's clients obtained their customers' consent to place debt collection calls (e.g., by way of consent provisions included in their agreements with debtors), the Classes are defined in such a way as to omit all individuals with debts associated with those companies. (*See* Class Definitions, *supra* at 7–8.)

Thus, by excluding from the Classes any individuals for whom NCO could arguably have obtained consent to call, the argument that individualized inquiries into consent will be necessary is really not viable. As courts considering certification of TCPA claims have repeatedly counseled, "courts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given." *Kristensen*, 12 F. Supp. 3d at 1307; *see also Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) ("having produced no evidence that any individual consented to receive the [calls in question]…[a] defendant is unable to realistically argue that individual issues regarding consent outweigh…commonality."); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (mere "speculation that [proposed class members] may have

---

should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.").

given their express consent to receive [calls] is not sufficient to defeat class certification."). Thus, if NC) tries to make a similar argument, this Court should treat it the same way—by simply ignoring it.

### 4.   Whether the Classes suffered the same injuries is a common question with a common answer.

Finally, whether Plaintiff and the Class members suffered substantially similar injuries and are entitled to damages and injunctive relief as a result, is also a common question capable of determination on a class-wide basis. *See Dukes*, 131 S. Ct. at 2551. Because the TCPA provides for statutory injunctive relief and monetary damages of $500 to $1500 per violation, calculating damages for each Class member is not a difficult task and requires nothing more than simple multiplication. *See* 47 U.S.C. §§ 227(b)(3)(A–C). Thus, it is enough that Plaintiff and the Classes received the same calls using the same autodialers or prerecorded messages, and they need not show that they suffered actual damages as a result of receiving the calls in question in order to recover. *Silbaugh*, 278 F.R.D. at 393. This too is a common question for the Classes.

**C. Plaintiff's claims are typical of the claims of the Classes.**

Next, Rule 23(a)(3) requires that a putative class representative have "claims or defenses that are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Stemple*, 2014 WL 4409817, at *5 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The typicality requirement is 'permissive' and requires only that the named plaintiff's claims 'are reasonably coextensive with those of the absent class members.'" *Stemple*, 2014 WL 4409817, at *5 (quoting *Hanlon*, 150 F.3d at 1020); *see also* 8 Newberg on Class Actions, § 24.25 (4th ed. 2013) (typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members.") In the TCPA context,

1    courts consistently find a named plaintiff's claims typical when the class's claims are
2    "based upon the same legal theory, *i.e.*, violation of the TCPA." *CE Design v. Beaty*
3    *Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009); *Malta v.*
4    *Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *2 (S.D. Cal.
5    Feb. 2013) (finding plaintiff's claim typical when it "[arose] from the same factual basis
6    as that of the class," and utilized the same legal theory under the TCPA).

7    Here, Plaintiff has neither unique claims to assert, nor unique defenses to have
8    asserted against him. Like each member of the Classes, he was called on his cell phone.
9    (*See* Ex. 6; *see also* Thornton Dep at 30:7–11, 79:4–80:2.) Like each member of the
10   Classes, the calls he received were made using one of NCO's ██████dialers (which all
11   functioned in substantially the same manner). (*See generally* Ex. 6; *see also* Stevens
12   Dep. at 194:19–195:1, 207:4–208:2.) Like each member of the Robocall Class, many
13   of the calls Plaintiff received featured an artificial or prerecorded voice as reflected by
14   NCO's records. (*Id.*) Like each member of the Classes, NCO has no record of Plaintiff
15   consenting to receive the calls at issue. (*See generally* Ex. 6; *see also* Ex. 11 at Resp.
16   No. 4; Stevens Dep. at 209:22–211:12.) And, like each member of the Classes, Plaintiff
17   will be required to prove that (a) NCO placed a call to his cellular telephone that (b)
18   either featured a prerecorded voice or was placed using an ATDS or a prerecorded
19   voice, in order to prevail on his TCPA claim. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

20   Accordingly, there should be no serious dispute about whether Plaintiff's claims
21   are typical of the claims of the other members of the Classes. *See CE Design*, 2009 WL
22   192481, at *5 (finding plaintiff's claims typical where they were "based upon the same
23   legal theory, *i.e.,* violation of the TCPA"); *Malta*, 2013 WL 444619, at *3(finding
24   typicality where claim "[arose] from the same factual basis as that of the class," and
25   utilized the same legal theory under the TCPA).

26   **D. Thornton will fairly and adequately protect the Classes' interests.**

27   Finally, "Rule 23(a)(4) requires that the representative plaintiff 'will fairly and
28   adequately protect the interest of the class.'" *Stemple*, 2014 WL 4409817, at *5

(quoting Fed. R. Civ. P. 23(a)(4)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1010 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, Plaintiff has the same interests as the other members of the Classes—all have received unauthorized and harassing debt collection calls made by NCO and would like to obtain relief under the TCPA. Further, Plaintiff has actively participated in this litigation, responding to multiple sets of discovery, sitting for deposition, and assisting counsel in their prosecution of the case. (*See* Gallucci Decl. at ¶¶ 18–19; *see also generally* Thornton Dep.) Further, Plaintiff did not bring this case to enrich himself, and he has demonstrated as much by acting as a zealous advocate for the Classes, putting their interests ahead of his own. (Thornton Dep. at 143:13–146:8.) Simply put, Plaintiff has no interests antagonistic to the Classes.

Likewise, Plaintiff's counsel—Jay Edelson of Edelson PC, Keith Keogh of Keogh Law, Ltd., and Douglas J. Campion of the Law Offices of Douglas J. Campion, APC—easily satisfy the adequacy requirement. In particular, Plaintiff's counsel have regularly engaged in major complex litigation and have extensive experience in consumer class actions involving cellular technology in general, and TCPA claims in particular. (*See* Edelson PC Firm Resume, attached as Exhibit A to the Declaration of Jay Edelson, filed contemporaneously herewith; Declaration of Keith J. Keogh, filed contemporaneously herewith; Declaration of Douglas J. Campion, filed contemporaneously herewith.)

Edelson PC, for instance, has been at the forefront of TCPA class action litigation, and has obtained several influential opinions in the field. (*See* Edelson PC Firm Resume at 3.) It was co-lead counsel in *Satterfield v. Simon & Schuster, Inc.*, where the Ninth Circuit confirmed the TCPA's application to text message calls. 569 F.3d 946, 949 (9th Cir. 2009). Likewise, it has acted as lead counsel in cases upholding

the constitutionality of the TCPA against first and fifth-amendment challenges. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011–12 (N.D. Ill. 2010) (first amendment); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1169–71 (N.D. Cal. 2010) (fifth amendment vagueness). Further, Edelson was recently appointed as class counsel in three other contested TCPA class actions: *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014); and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014).

For these reasons, Plaintiff's counsel have been—and will continue to be—adequate counsel for the Class. *See Whitten v. ARS Nat. Servs., Inc.*, No. 00-cv-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) ("The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again.") (internal quotations omitted).

## IV.   The Proposed Class Satisfies Rule 23(b)(3)'s Requirements.

In addition to Rule 23(a)'s requirements, the proponent of class certification must show that a proposed class falls within at least one of the three subsections of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiff seeks certification of the Classes under Rule 23(b)(3), which provides for class treatment where: (1) questions of law and fact common to the class members predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be best served by settling their differences in a single action." *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (citing *Hanlon*, 150 F.3d at 1022)).

### A. Common questions of law and fact predominate.

The predominance requirement "tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation," which is a "far more demanding" standard than the commonality requirement of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Nevertheless, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Because "Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . . a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

While a plaintiff seeking certification under Rule 23(b)(3) must advance a theory of liability that can be resolved on a class-wide basis, the Court need not evaluate the merit of the theory itself, and instead should simply determine whether common issues predominate under that theory. *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808–09 (9th Cir. 2010). Because the predominance test "begins, of course, with the elements of the underlying cause of action," *Erica P. John Fund, Inc.*, 131 S. Ct. at 2184, Plaintiff's class-wide liability theory must address whether he and the Classes (1) received calls on their cell phones, (2) made using an ATDS (for the Autodialer Class) or an artificial or prerecorded voice (for the Robocall Class). *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Here, common issues predominate with regard to each aspect of Plaintiff's TCPA claims. For instance, no individual issues will or could arise with regard to the first element—whether the calls at issue were made to cell phones—because both Classes are limited to only those individuals who received calls on their cell phones. (*See* Hansen Decl. ¶¶ 29–30.) And, as Plaintiff's expert has explained, NCO's records can be analyzed in an automated fashion (by cross-referencing with commercially available

databases) to determine which calls were made to cell phones, and which were not.

Likewise for the analysis of whether an ATDS was used. The Autodialer Class consists entirely of individuals who received calls that NCO made using one of its dialers. And while NCO did use ███ different dialers throughout the Class Period, its corporate representative testified that all ██ dialers have substantially identical features and were operated in a substantially identical fashion. (*See* Stevens Dep. Tr. at 58:4–6, 255:5–11, 258:25–259:13, 263:24–265:3; *see also* Hansen Rpt. at ¶¶ 13–26.) Thus, whether that equipment constitutes an ATDS is a question that will be answered in the same way for each dialer and each Class member.

Similarly, the Robocall Class consists only of those individuals who received calls on their cell phone, featuring an artificial or prerecorded voice message as reflected in NCO's records. Because those individuals all received substantially identical calls recorded in the same manner, the Court's analysis of whether the calls received by Plaintiff featured a prerecorded voice will be dispositive with regard to the Robocall Class. *Knutson*, 2013 WL 4774763, at *5 ("Whether a customer received an autodialer or artificial/prerecorded call may be determined objectively.").

Finally, whether Defendant can prove prior express consent will be a question common and predominant to all members of the Classes. As explained above, one need only look to NCO's records—which are very detailed—to determine the individuals who were called without consent. Indeed, the Classes consist of only those individuals who (as reflected in and established by NCO's records) never provided any indicia of consent to be called. *See* Section III.B, *supra*. As such, there is "no evidence that any [member of the Classes] consented to receive the [calls]" and NCO "is unable to realistically argue that individual issues regarding consent outweigh []commonality." *Silbaugh*, 278 F.R.D. at 394; *Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given. It also means that courts should afford greater weight to a plaintiff's theory of class-wide proof of

lack of consent when that theory is entirely unrebutted by the precise type of evidence which could do it the greatest harm—evidence of express consent.").

Accordingly, because Plaintiff has defined the Classes in a narrow fashion that avoids the presence of any individualized issues, the numerous common issues facing the Classes predominate.

**B. A class action is a superior method for adjudicating the Class members' claims.**

Finally, Rule 23(b)(3)'s superiority requirement seeks to assure that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175–76. "'Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation,' and it is superior 'if no realistic alternative exists.'" *Stemple*, 2014 WL 4409817, at *6 (quoting *Valentina v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996)). In assessing the desirability of class-wide litigation, the Court considers the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

As courts through the country have recognized, although "the TCPA [has] built-in incentives for aggrieved plaintiffs to litigate individually—such as the opportunity to collect statutory damages . . . it does not follow that such claims are inappropriate for class treatment." *Manno,* 289 F.R.D. at 690 (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 94–95 (3rd Cir. 2011); *see also Knutson*, 2013 WL 4774763, at *10 ("Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA . . . the Court finds a class action would achieve Plaintiffs' objective better than if class members were required to bring

individual actions.") (citing *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). "While nuisance calls from debt collectors may not be 'the most egregious of wrongs policed by Congress,' [the courts should not] assume 'that individual suits [will] deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated—or even more motivated—to sue in the absence of the class action vehicle.'" *Manno*, 289 F.R.D. at 690.

In that light, there's no question a class action is the superior method here. Plaintiff's and the Classes' claims involve identical alleged violations of the TCPA and are subject to generalized proof. Moreover, absent a class action, most members would find the cost of litigating their claims—which are statutorily limited to a maximum of $500 (or $1,500) per call—to be prohibitive. To be sure, given the small amount of damages relative to the resources necessary to litigate these claims,[15] it is unlikely a significant number of Class members would be able to obtain redress for NCO's misconduct, or that NCO would be deterred from proceeding with that same conduct. Not to mention that prosecution of thousands of identical claims would be judicially inefficient. *See Ramirez v. Trans Union,* LLC, 301 F.R.D. 408, 424 (N.D. Cal. 2014) ("It is more efficient to adjudicate the claims as a class action rather than thousands of individual actions."). In the end, "there are no prickly individualized questions with the potential to derail this class action," it should move forward. *Manno*, 289 F.R.D. at 690; *see also Stemple*, 2014 WL 4409817, at *10 ("A class action is the superior method of proceeding in this case, particularly since there is a common question that predominates regarding express prior consent . . . .").

**V.     The Court Should Appoint Plaintiff's Counsel as Class Counsel.**

---

[15]     For example, this case has required Plaintiff to litigate for nearly two years now, serve and respond to several sets of written discovery requests, take and sit for numerous depositions, and engage in extensive discovery motion practice. The idea that an individual consumer could take on such tasks, which have been absolutely necessary to the prosecution of the case, is not realistic.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in this case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Proposed Class Counsel have diligently investigated and prosecuted the claims at issue in this case. They have devoted substantial time, energy, and resources to developing the theory of Plaintiff's claims, obtaining discovery to narrow the proposed Class definitions, and progressing the litigation. (*See* Declarations of Jay Edelson, Douglas Campion, and Keith Keogh, filed contemporaneously herewith.) As described in Section III.D, *supra*, Plaintiff's counsel also have extensive experience prosecuting TCPA claims and have been appointed class counsel in numerous TCPA actions in the past. (*Id.*) They have also committed and will continue to commit the resources necessary to adequately represent the Classes throughout the pendency of this matter. (*See* Edelson Decl. at ¶¶ 5–6.) As such, Plaintiff's counsel, Jay Edelson, Douglas J. Campion, and Keith Keogh, should be appointed Class Counsel pursuant to Rule 23(g).

## <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff has satisfied Rule 23's certification requirements. Therefore, Plaintiff Wesley Thornton respectfully requests that the Court enter an order certifying the proposed Classes pursuant to Rule 23(b)(3), appointing Jay Edelson, Douglas Campion, and Keith Keogh as Class Counsel, and awarding such additional relief as the Court deems reasonable and just.

Respectfully Submitted,

**WESLEY THORNTON,** individually and on behalf of all others similarly situated,

Dated: January 23, 2015            By:___s/ J. Dominick Larry_____

*Counsel for Plaintiff*

Jay Edelson (Admitted *pro hac vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *pro hac vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *pro hac vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *pro hac vice*)
cdore@edelson.com
J. Dominick Larry (Admitted *pro hac vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Ronald A. Marron
ron@consumersadvocates.com
Alexis M. Wood
alexis@consumersadvocates.com
Kas Gallucci
kas@consumersadvocates.com
LAW OFFICES OF RONALD A. MARRON
651 Arroyo Drive
San Diego, California 92103
Tel: 619.696.9006
Fax: 619.564.6665

Douglas J. Campion
doug@djcampion.com
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Tel: 619.299.2091
Fax: 619.858.0034

Keith J. Keogh (Admitted *pro hac vice*)
keith@keoghlaw.com
KEOGH LAW, LTD
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Tel: 312.726.1092
Fax: 312.726.1093