# EXHIBIT 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JEFFREY MOLNAR, WESLEY
THORNTON, AILEEN MARTINEZ,
CHIQUITA BELL, TEYIA BOLDEN, and
ANTOINETTE STANSBERRY
individually and on behalf of all others
similarly situated,

     *Plaintiffs*,

  *v.*

NCO FINANCIAL SYSTEMS, INC., a
Pennsylvania Corporation,

     *Defendant*.

Case No. 3:13-cv-00131-BAS-JLB


**RULE 26(a)(2) EXPERT
DISCLOSURE, WRITTEN REPORT,
AND DECLARATION OF
JEFFREY A. HANSEN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF JEFFREY A. HANSEN

1.     I, Jeffrey A. Hansen, hereby declare as follows:

2.     My name is Jeffrey A. Hansen. I am an adult over the age of 18, a resident of the state of California, and I reside at 2625 Kings View Circle, Spring Valley, CA 91977. Unless indicated otherwise, I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them.

3.     I was asked to prepare this declaration by Plaintiffs' counsel in the above-captioned matter, Law Offices of Ronald A. Marron, Law Offices of Douglas J. Campion, APC, Edelson PC, and Keogh Law, Ltd., in support of Plaintiffs' anticipated motion for class certification.

4.     I have been retained in this case at a rate of $300 per hour, for all services rendered, and $380 per hour for depositions.

*Experience and Credentials.*

5.     I am the principal of Hansen Legal Technologies, Inc. My firm is in the business of handling Information Technology, including investigations and analysis of electronic data. I have served as an expert or consultant in more than 50 TCPA class action lawsuits, and as an expert or consultant in numerous other civil cases.

6.     With regard to my experience as an expert and consultant in legal matters, generally, I have frequently served as an expert witness and consultant to law firms in conducting computer forensic analyses. I have also assisted in electronic discovery issues.

7.     Specific to this case, my firm was retained to assist Plaintiffs and their counsel in evaluating and analyzing electronic data related to outbound calls and other electronic data associated with computer systems and/or telephone dialing systems that may have been used by Defendant NCO Financial Systems, Inc. ("NCO") and/or its agents. In that respect, I have extensive experience with data warehousing, including data warehousing related to telemarketing and autodialers in general. I am familiar with

2

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
EXPERT DECL. OF JEFFREY A. HANSEN
**EXHIBIT 4 - PAGE 127**

the procedures involved in such practices, and I have personally engaged in data warehousing regarding the compilation of certain lists, including demographic and target audience lists for telemarketing, and have personally repaired defective lists to eliminate improperly formatted and corrupted data.

8.     I also frequently act as a consultant to companies that engage in the use of autodialers, and I am familiar with their use and procedures, and the technical aspects of that business. In that capacity, I have assembled, configured, maintained and operated all aspects of autodialers, and interfaced with the telecommunications providers through whose networks the autodialers operate.

9.     I have set up and maintained all aspects of predictive dialers and autodialers, from predictive dialers operating with just three telephone lines to outbound call centers with over 1,000 phone lines. When building these systems, I have used various software and hardware solutions for predictive and autodialers, both proprietary and open source, and customized those systems for their particular uses. I myself have used and maintained predictive and autodialers, and trained others to do the same.

10.     Further, I am familiar with the manner in which outbound dial lists are used and maintained in the telemarketing industry, which I understand to be similar to the debt collection industry in which NCO operates. Similarly, I am familiar and have experience with, and know how to use, databases containing cell block identifiers and ported number lists, both of which identify cellular type telephone numbers and are typically used in these industries.

11.     Over the last twenty-four (24) years, I have also had extensive experience in a broad range of other areas in the electronic and information technology fields and obtained many certifications such as MCP 4.0, A+, Network+, MCP 2000, MCSA, MCSE, Linux+, I-Net+, Security+, CIW Security Analyst.  From the hardware perspective, I have extensive experience in troubleshooting and repairing at the component level, and building various systems for various purposes. I have designed,

3

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
EXPERT DECL. OF JEFFREY A. HANSEN
**EXHIBIT 4 - PAGE 128**

built and maintained computer networks in a variety of environments from commercial businesses to very large DoD networks. I have taught approximately 1,000 others the skills to become network engineers themselves. I have had extensive experience in dealing with security breaches and hardening computer networks against those breaches. I have handled many computer forensic and E-Discovery matters, including internal investigations in companies, working at the FBI sponsored Regional Computer Forensics Laboratory, and founding a computer forensics and E-Discovery firm over 6 years ago. I have also had extensive experience with the set-up and use of predictive and auto dialers. (*See* Exhibit A – Resume of Jeffrey A. Hansen).

12.   I have been called to testify in the following civil matters: *Craig Casey v. Valley Center Insurance Agency Inc.*, Case No. 37-2008-00004378-SC-SC-CTL (San Diego Superior Court); *Stemple v. QC Holdings*, Case No. 12-CV-1997-CAB-WVG (S.D. Cal.); *Hahn v. Massage Envy Franchising*, Case No. 3:12-cv-00153-DMS-BGS (S.D. Cal.); *Abdeljalil v. Gen. Electric Capital Corp.*, Case No. 12-cv-02078-JAH-MDD (S.D. Cal.); *Jasminda Webb v. Healthcare Revenue Recovery Group, LLC*, Case No. C 13-0737 JD (N.D. Cal.); and, *Amanda Balschmiter v. TD Auto Finance, LLC*, Case No. 2:13-cv-01186 (E.D. Wisc.).

*Work and Analyses in this Case Regarding NCO's Use of Automatic Telephone Dialing Systems.*

13.   I have reviewed various documents and evidence from this case relating to NCO's placement of telephone calls to Plaintiffs' cellular telephones and those of the putative class. Specifically, I have reviewed the following documents: 1) Exhibit B - FCC Order 03-153; 2) Exhibit C - Genesys website for their soundbite dialer; 3) Exhibit D - Aspect Unison Predictive Dialer Product Overview; 4) ███████████; 5) ███████████; 6) ███████████; 7) ████

4

1

2     ; 8)

3     ; 9)

4     10) L

5     ; 11)

6     ; 12)

7     ; 13)

8     ; 14)

9     ; 15)

10     and 16)

11

12     .

13     14.    Based upon the documents and evidence I have reviewed, all the calls at

14 issue that were made to Plaintiffs and the putative class were made exclusively using a

15 group of dialing systems. Those systems are

16 . As

17 explained further below, in my expert opinion, each of these dialing systems satisfies

18 the requirements of an "automatic telephone dialing system" ("ATDS") as defined by

19 the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

20     15.

21

22

23

24

25

26

27

28 [1]     In industry parlance, a "campaign" is calling a list of phone numbers organized by some predefined criteria for a specific purpose.

1

2

3

4                                                                          ;

5

6

7

8

9

10

11

12

13

14

15

16

17

18      16.

19

20

21

22

23

24

25

26

27

28

---

2       A "pool" is, like a campaign, in that it is calling a list of phone numbers
organized by some predefined criteria for a specific purpose.

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
EXPERT DECL. OF JEFFREY A. HANSEN
**EXHIBIT 4 - PAGE 131**

17.   Like ███████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ )

18.   ████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

19.   After reviewing the above documents, and based on my experience with predictive dialers and autodialers, I am of the opinion that NCO used a number of Automated Telephone Dialing Systems to place telephone calls to Plaintiffs and all of the putative class members, or more specifically, that the characteristics of each of NCO's telephone dialing systems described above meet the definition of equipment that

has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers. Specifically, the dialers call numbers that are stored as a list, which itself is stored in a table of a database. While NCO's telephone dialing systems do have the ability to send agent-less pre-recorded/artificial voice messages, their primary function is a predictive dialer.

20.     Predictive dialers all work under the same guiding principle: they transfer telephone numbers to be called to a list or "campaign." This list of numbers is then dialed without human intervention. The calls are made, using multiple telephone lines, in advance of being connected to a live operator.  Using a complex computer algorithm, the dialing system will "predict" how far in advance to make the calls in attempt to prevent time wasted in listening to rings, answering machines, disconnected phone numbers and calls that are not answered.

21.     The fact that NCO's dialers place calls to numbers stored by NCO's dialing systems and deliver predictively dialed calls indicates that NCO's dialers meet the definition of an ATDS, as it relates to predictive dialers, as clarified in the Federal Communications Commission's ("FCC") 2003 Order:

> The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers... The principal feature of predictive dialing software is a timing function, not number storage or generation. ...[T]hese machines are not conceptually different from dialing machines without the predictive computer program attached."
>
> ....
>
> [I]n order to be considered an 'automatic telephone dialing system,' the equipment need only have the *capacity* to store or produce telephone numbers (emphasis added). . ..' ...In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. ...the evolution of the teleservices

8

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
EXPERT DECL. OF JEFFREY A. HANSEN
**EXHIBIT 4 - PAGE 133**

1
2
3

industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention.

4

....

5
6
7
8
9
10
11

[T]o exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result. We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress.

12
13

(Exhibit B – FCC Order 03-153 ¶¶ 131-134 (finding that a predictive dialer falls within the TCPA's definition of "automatic telephone dialing system").)

14
15
16
17
18
19

22.    In 2008, a consortium of debt collectors petitioned the FCC to reconsider its 2003 Order. In response, the FCC affirmed the 2003 Order. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, FCC Docket No. 07-232.

20
21

23.    Additionally, the properties of NCO's dialing systems meet the definition of an ATDS as further clarified by FCC Order 12-56, wherein, the FCC stated:

22
23
24
25
26
27
28

Under the TCPA, the term "automatic telephone dialing system" is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1). The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention whether or not the numbers called are randomly or sequentially generated or come from calling lists.

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
EXPERT DECL. OF JEFFREY A. HANSEN
**EXHIBIT 4 - PAGE 134**

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 at 14092 ¶ 133 (2003).

24.    Thus, in my expert opinion, the dialing systems NCO used (as outlined above) each constitute an ATDS as contemplated by the TCPA and clarified by the FCC, because they have the capacity to either call numbers stored or to call numbers generated by a number generator:

> The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have "the *capacity* to store or produce telephone numbers (emphasis added)...."

25.    (*See* Exhibit B - FCC Order 03-153 at p. 78).

26.    Those FCC orders and rulings provide me with the information that assists me in forming an opinion about whether NCO's dialers satisfy the definition of an ATDS. Based on those orders and rulings, and based upon my review of the documents and evidence provided in this case, it is also my expert opinion that all of the calls made to Plaintiffs and the putative class in this case were made using automated telephone dialing systems.

*Additional Work and Analyses, Including Identification of Cellular Phone Numbers Called.*

27.    In addition to identifying and analyzing the technology used to make the calls at issue in this case, I have been retained to examine the methodology and procedures used in gathering and assembling the data   provided by NCO.

28.    I will also be examining any outbound dialing lists produced by the NCO and identifying all of the cellular telephone numbers contained on those lists and called within the relevant time period. If I were provided a list of all the telephone numbers called by NCO's dialing systems, along with the phone number and date columns

10

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
EXPERT DECL. OF JEFFREY A. HANSEN
**EXHIBIT 4 - PAGE 135**

1  included in any such lists, exported from NCO dialers, in a non-proprietary format

2  (specifically a comma delimited text file with quotation qualifiers – CSV), I would be

3  able to determine the total number of calls made during the relevant period of time, the

4  total number of calls to cellular telephone numbers, and the total number of unique

5  cellular telephone numbers called.

6       29.    Additionally, I will be examining future discovery responses and will be

7  formulating additional expert opinions on the topics raised in those discovery responses

8  as requested and appropriate.

9      *Amendments and Modifications.*

10       30.    I reserve the right to amend, modify or supplement the statements and

11  opinions set forth herein as appropriate.

12      *Exhibits.*

13       31.    Attached hereto as Exhibit A is a true and accurate copy of the Resume of

14  Jeffrey A. Hansen.

15       32.    Attached hereto as Exhibit B is a true and accurate copy of FCC Order 03-

16  153.

17       33.    Attached hereto as Exhibit C is a true and accurate copy of the Genesys

18  website regarding the Soundbite predictive dialer, located at

19  http://www.genesys.com/soundbite/collections-and-payments/hosted-contact-center

20  (last visited August 15, 2014).

21       34.    Attached hereto as Exhibit D is a true and accurate copy of the Aspect

22  Unison Predictive Dialer Product Overview.

23      I declare that the foregoing is true and correct, subject to the laws of perjury of

24  the United States. Executed in Spring Valley, CA on this 15th day of August 2014.

Jeffrey A. Hansen

*Molnar, et al. v. NCO Financial Systems, Inc.*, No. 13-cv-131
Expert Decl. of Jeffrey A. Hansen

**EXHIBIT 4 - PAGE 136**