Debbie P. Kirkpatrick, Esq. (SBN 207112)
Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:    619/758-1891
Fax:    619/296-2013
drichard@sessions-law.biz
dkirkpatrick@sessions-law.biz

Michael D. Slodov (Ohio SCR# 0051678)
*Admitted Pro Hac Vice*
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
15 E. Summit St.
Chagrin Falls, Ohio 44022
Tel: 440.318.1073
Fax: 216.359.0049
mslodov@sessions-law.biz

Attorneys for Defendant NCO Financial Systems, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY MOLNAR, et al.,<br><br>   Plaintiffs,<br><br> vs.<br><br>NCO FINANCIAL SYSTEMS, INC.,<br><br>   Defendant. | Case No.  3:13-cv-00131- BAS-JLB<br><br>**DEFENDANT NCO FINANCIAL SYSTEMS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: March 23, 2015<br>Time: 10:30 a.m.<br>Courtroom: 4B<br>Judge: Cynthia A. Bashant |

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to
Plaintiff's Motion for Class Certification

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................1

II.    LEGAL STANDARD ...........................................................4

III.   THORNTON'S CLAIMS CANNOT BE RESOLVED ON A CLASS
       WIDE BASIS ...................................................................5

A.     Plaintiff Thornton consented to be called on his cellular phone, and lacks
       standing to represent either the Autodialer or Robocall Class. ......................5

B.     Plaintiff's claims are not typical of the class and he is therefore not an
       adequate class representative. ........................................................11

C.     The putative classes are not ascertainable. ....................................12

D.     Plaintiff has not shown numerosity. .............................................19

E.     Plaintiff has not shown commonality. ..........................................21

F.     Plaintiff has not shown questions of law or fact common to class members
       predominate. ...........................................................................23

G.     Plaintiff has not shown a class action is superior to individual suits for fairly
       and efficiently adjudicating the controversy. ...............................24

IV.    CONCLUSION ...................................................................25

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to
Plaintiff's Motion for Class Certification

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D.Cal. 2014) ................................12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184 (2013)...................4

*Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir.2003)................................23

*Bus. Integration Servs., Inc. v. AT & T Corp.*, 251 F.R.D. 121 (S.D.N.Y.2008)....10

*Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544 (N.D.Cal.2007).............................19

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ........................................3, 4

*Connelly v. Hilton Grand Vacations Co., LLC*,

   294 F.R.D. 574 (S.D.Cal.2013)..................................................... 12, 23

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...........................11

*Gager v. Dell Fin. Svcs., LLC*, 727 F.3d 265 (3d Cir. 2013)..................................7

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ..........................................6

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir.2008) ..........................23

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) ..............................7

*Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS),

   2011 WL 579238 (S.D.Cal. Feb. 9, 2011) ...............................................10

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir.1992) ..............................11

*Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*,

   414 F.2d 750 (9th Cir.1969)....................................................................10

*Hawkins v. Comparet–Cassani*, 251 F.3d 1230 (9th Cir.2001) .............................6

*Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349 (3d Cir.2013)...............................12

*Hicks v. Client Services, Inc.*, No. 07–61822, 2008 WL 5479111

   (S.D.Fla. Dec. 11, 2008)..........................................................................22

*Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D.Ill.2013)......................... 16, 17

*Knutson v. Schwan's Home Service, Inc.*, No. 3:12–cv–0964–GPC–DHB,

   2013 WL 4774763 (S.D.Cal. Sept. 5, 2013) .............................................12

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to
Plaintiff's Motion for Class Certification

ii

*Labou v. Cellco Partnership*, No. 2:13–cv–00844–MCE–EFB,

2014 WL 824225 (E.D.Cal. Mar. 3, 2014) ................................................... 11, 12

*Lamont v. Furniture North, LLC*, No. 14–cv–036–LM,

2014 WL 1453750 (D.N.H. Apr. 15, 2014) ...................................................10

*Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA PJWX,

2014 WL 5904907 (C.D. Cal. Aug. 4, 2014).................................................4

*Malcolm v. National Gypsum Co.*, 995 F.2d 346 (2d Cir. 1993) ...........................25

*Marks v. Crunch San Diego, LLC*,__F.Supp.3d __,

2014 WL 5422976 (S.D.Cal. Oct. 23, 2014) .................................................. 3, 22

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.2012).......................4

*Meyer v. Portfolio Recovery Assoc. LLC*, 707 F.3d 1036 (9th Cir. 2012) ...............5

*Neder v. United States,* 527 U.S. 1 (1999)......................................................7

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ................. 7, 10

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v.*

*Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014) .......................................6

*Ryan v. Jersey Mike's Franchise Systems*, No. 13–CV–1427–BEN (WVG),

2014 WL 1292930 (S.D.Cal. Mar. 28, 2014) ............................................... 6, 12

*Saunders v. NCO Fin. Sys., Inc.*, 910 F.Supp.2d 464 (E.D.N.Y. 2012) ...................6

*Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D.Cal.2014)............................... 16, 17

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012)......... 8, 9, 16

*Soto v. Castlerock Farming and Transport, Inc.*,

282 F.R.D. 492 (E.D.Cal. 2012) ...................................................................6

*Stemple v. QC Holdings, Inc.*, No. 12–cv–01997–BAS(WVG),

2014 WL 4409817 (S.D.Cal. Sept. 5, 2014) ........................................... 19, 20, 23

*Thomasson v. GC Servs. Ltd. P'ship*, 539 F. App'x 809 (9th Cir. 2013)................21

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012)....................................8

*U.S. v. Great American Ins. Co. of New York,* 738 F.3d 1320 (Fed Cir. 2013) ......10

*Van Patten v. Vertical Fitness Group, LLC,*  22 F.Supp.3d 1069 (S.D.Cal. 2014)...5

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to
Plaintiff's Motion for Class Certification

iii

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,*
   274 F.R.D. 229 (S.D.Ill.2011)......................................................................17
*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).........................................25
*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168 (9th Cir.2010).............24

**Federal Statutes**

47 U.S.C. § 227(b)(1)(A)...........................................................................................8
47 U.S.C. § 227(b)(1)(A)(iii)...............................................................................1, 8
47 U.S.C. § 227(b)(1)(B)......................................................................................1, 2


**Other Authorities**

2 McLaughlin on Class Actions § 8:7 (8th ed.)................................................25
2 McLaughlin on Class Actions § 8:17 (8th ed.)..............................................25
Black's Law Dictionary (9th ed. 2009)...............................................................7
*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,*
   23 F.C.C.R. 559 (Jan. 4, 2008)..................................................................5, 24
Rest. (Second) of Torts § 892 (1979)..................................................................7
Rest. (Second) of Torts § 892A (1979).............................................................7, 9
Rest. (Third) Of Agency § 2.03 (2006)............................................................10

# I.   INTRODUCTION

Plaintiffs Jeffrey Molnar[1] and Wesley Thornton commenced this putative class action on January 16, 2013, against NCO Financial Systems, Inc. ("NCO") alleging several violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). ECF No. 1. After two years of litigation, the coming and going of six other named plaintiffs,[2] two amendments to the complaint broadening their claims and theories,[3] extensive discovery related to NCO's calling practices, production of thousands of documents, Plaintiff Thornton alone[4] now seeks to represent two narrower classes pursuant to Fed.R.Civ.P. 23(a) and (b)(3). The proposed classes consist of persons who owed a "Qualifying Debt" and were

---

[1] Pursuant to a joint motion for stipulation of dismissal filed February 20, 2015, Plaintiff Molnar's claims were voluntarily dismissed. ECF No. 143. The parties stipulated that the facts showed that Mr. Molnar was forwarding calls made to his residential phone to his cellular number, and he was not called in violation of the TCPA. ECF No. 142.

[2] On March 21, 2013, Plaintiff Rosemary House filed her Complaint against NCO asserting similar claims for alleged violations of the TCPA, S.D. Cal. Case No. 3:13-cv-00685. The cases were later consolidated. ECF. No. 54. Aileen Martinez was added to the action December 6, 2013 at the time of filing their first amended complaint. ECF No. 55. On February 20, 2014, Plaintiff House was voluntarily dismissed, while the claims of Chiquita Bell, Teyia Bolden, and Antoinette Stansberry were added. ECF No. 65, 66. On January 7, 2014, Alexander Monge filed a similar action in the Central District of California. By order dated February 28, 2014, the Action was transferred to this court and docketed as case no. 3:14-cv-00460. The Monge action was consolidated with this case, and was later settled and dismissed.

[3] ECF Nos. 55, 66. Plaintiffs consolidated amended complaint included claims for alleged violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B) arising from text messages, telephone calls and artificial voice calls. ECF No. 66, ¶¶ 24-65.

[4] Plaintiff Thornton does not allege that Plaintiffs Molnar, Martinez, Bell, Bolden and Stansberry are included within his newly defined classes, and the remaining plaintiffs have not joined in the motion.

called since January 16, 2009 on a "Qualifying Cellular Telephone Number" with NCO dialers (or with Livevox featuring an artificial or prerecorded voice). ECF No. 134-1, pp. 14, 15.  Plaintiffs memorandum[5] for class certification concedes there is no evidence to sustain their putative class claims related text messaging,[6] abandons the claims under 47 U.S.C. § 227(b)(1)(B),[7] and proceeds in the face of substantial evidence produced in discovery demonstrating NCO had prior express consent to call each of the named plaintiffs and the class regarding debts placed for collection with NCO, which NCO obtained from its clients and directly from consumers.[8]

Indeed, the facts relating to all the *proposed* class representatives demonstrate class certification would be improper here because individualized questions abound - identifying the called party at the time of the calls, wrong number calls, prior express consent obtained in varying ways; call forwarding, shared phones, calls made without an automated dialer and manually dialed calls. Plaintiff offers no solution to avoid having these crucial issues predominate.

As more fully set forth below, Plaintiff's motion fails for seven reasons.

**<u>First</u>**, Plaintiff Thornton consented to be called on his cellular phone number. Also, Mr. Thornton's mother authorized NCO to call his new number, ending in 4364. Mr. Thornton's claim is therefore subject to unique defenses and not typical of either of the classes he purports to represent, and he lacks standing to represent those who did not consent.

---

[5] Plaintiff's "motion" for class certification does not include a notice of motion, or motion as required by Local Rule 7.1(f)(1), but instead includes two copies of his 33 page memorandum. ECF No. 134, 134-1. The failure warrants denial of the motion. *Cf. Swanson v. Holder*, 2011 WL 3794939, *1 (S.D.Cal.Aug. 26, 2011).
[6] ECF No. 134-1, p. 8, n. 10, l. 28.
[7] ECF No. 66, ¶¶ 65, 81; No. 134-1, *passim*.
[8] NCO Resp.to Plaintiff Thornton's Interrogatory Nos. 18-19.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

2

**Second**, because Plaintiff Thornton's claims are subject to unique defenses, his claims are not typical of those of the class and he is not an adequate class representative.

**Third**, Plaintiff has not shown that a class is ascertainable. Plaintiff's purported expert has utterly failed to develop an objective or reliable means of analyzing NCO's accounts that would obviate the need for an individualized review of each account and creditor records to assess prior express consent to make the calls.

**Fourth**, Plaintiff has also failed to show numerosity. Despite extensive discovery, the analysis performed on the sample data and inferences Plaintiff asks the Court to draw from the sampling are fundamentally flawed. There is no valid statistical evidence for extrapolating from the sample to the larger body of calls.

**Fifth**, there is no proof that the entire putative class suffered a common injury, evidence of a class wide prospect for generating common answers, and Plaintiff has not shown common questions predominate over individual questions of consent. Moreover, there is no evidence of the categorical use of an ATDS[9] to make calls to any named plaintiff or to the putative classes.

**Sixth**, there is no proof that Defendant acted uniformly across the putative classes; Plaintiff has not identified a common contention that is capable of class-wide resolution, and individual adjudication of numerous issues, including the pivotal element of prior express consent, is necessary.

**Finally**, a class action is not a superior means for fairly and efficiently adjudicating this controversy.

---

[9] See *Marks v. Crunch San Diego, LLC*,___F.Supp.3d __, 2014 WL 5422976, *1-3 (S.D.Cal. Oct. 23, 2014)("The platform used by Defendant does not have the present capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers.").

## II. LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'...'To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal references omitted). A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194 (2013); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir.2012). Rule 23(a) requires Plaintiff to show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The three subdivisions of Rule 23(b) present alternatives; here, Plaintiff relies exclusively on Rule 23(b)(3), which permits certification when the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). ECF No. 134-1, p. 16. Plaintiff must satisfy Rule 23's requirements by a preponderance of the evidence. See *Litty v. Merrill Lynch & Co.*, 2014 WL 5904907, at *2 (C.D. Cal. Aug. 4, 2014).

In addressing class certification, a probing analysis of the claim itself must take place, and "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432. The same principles govern

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

4

the determination under Rule 23(b). *Id.* "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).'" *Id.*

## III.   THORNTON'S CLAIMS CANNOT BE RESOLVED ON A CLASS WIDE BASIS

### A.   Plaintiff Thornton consented to be called on his cellular phone, and lacks standing to represent either the Autodialer or Robocall Class

Mr. Thornton knowingly released his cellular phone number, (828) 387-6134 (6134), to New River Light & Power (NRLP), American Honda and Bank of America; NCO called attempting to collect these debts on NCO accounts 2C7E4B, UQE904 and FR4370, respectively. Thornton Dep., pp. 52, 54-55, 64-65, 66-67; Thornton 2d Supp. Resp. to Int. 10; Stevens Decl. ¶ 15, Table; ¶ 51. Mr. Thornton agrees that consent to call his cellular number was given to these creditors. Thornton Dep., p. 80. Mr. Thornton never communicated his new number to any of his creditors after defaulting on his obligations. *Id.* NCO's first call was to the 6134 number on NCO accounts 2C7E4B and UQE904. Stevens Decl. ¶ 15, Table; ¶ 51. Regarding NCO account 2C7E4B, NCO next called Mr. Thornton's former home, his mother's home number, (334) 792-8790, in an effort to reach him. Stevens Decl. ¶ 15, Table 1; ¶ 51; Thornton Resp. to Int.. 5 ("Plaintiff resided with his mother from January 2008 until March 2008."); Thornton Dep., pp. 35-36. In August, 2008, Mr. Thornton's mother called NCO and authorized NCO to call her son at his new number. Stevens Decl. ¶ 15, Table; ¶ 51; Thornton Dep. pp., 36-37, 56-58.

Because he gave consent[10] to be called on his cell phone to NRLP; all the calls made by NCO related to the NRLP account, and his mother authorized NCO to call, Thornton lacks standing to represent either of the proposed classes.

---

[10] "[I]n the context of debt collection calls, the FCC concluded that 'the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application,

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

5

"The question about whether Plaintiff gave his number (or not) calls into question Plaintiff's standing to bring the claim *at all*. *Ryan v. Jersey Mike's Franchise Systems*, No. 13–CV–1427–BEN (WVG), 2014 WL 1292930, \*7 (S.D.Cal. Mar. 28, 2014). "A named plaintiff cannot represent a class alleging ... claims that the named plaintiff does not have standing to raise.... It is not enough that the class members share other claims in common." *Hawkins v. Comparet–Cassani,* 251 F.3d 1230, 1238 (9th Cir.2001); *Soto v. Castlerock Farming and Transport, Inc.,* 282 F.R.D. 492, 503 (E.D.Cal. 2012); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). To have standing to pursue a class action, Plaintiff must show: "(1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014). As to the second factor, "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant...." *Id*., 775 F.3d at 163.

**First**, by providing his 6134 cell number to NRLP and thereby consenting to be called, Mr. Thornton cannot complain about debt collection calls made to reach him on his 4364 cell number. Because NCO called him on his 4364 cell phone, not 6134, the

---

reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.'" *Van Patten v. Vertical Fitness Group, LLC*, 22 F.Supp.3d 1069, 1073 (S.D.Cal. 2014)(quoting *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 564 (Jan. 4, 2008)); *Meyer v. Portfolio Recovery Assoc. LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012); *Saunders v. NCO Fin. Sys., Inc.*, 910 F.Supp.2d 464, 467 (E.D.N.Y. 2012).

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

6

number originally provided, this claim is somewhat atypical of an ordinary TCPA case. Notwithstanding, the common law formulation of consent treats this as a distinction without a difference - the fact that the cellular number called differs from the cellular number given, because placing calls to his cell phone amounts to substantially the same conduct to which Mr. Thornton consented to.

In the TCPA, the statutory phrase "other than a call made ... **_with the prior express consent of the called party_**," contains no hint that Congress intended the word "consent" to have a meaning different from the established meaning the term acquired under the common law. "'[W]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.' 'Consent' is such a term...." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252-53 (11th Cir. 2014)( (internal references omitted). See also *Gager v. Dell Fin. Svcs., LLC*, 727 F.3d 265, 271, 272 (3d Cir. 2013); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014).

Under the common law, "consent" means "willingness in fact for conduct to occur." REST. (SECOND) OF TORTS § 892 (1979).[11] As provided in the Restatement, "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it. (2) To be effective, consent must be (a) by one who has the

---

[11] In *Satterfield v. Simon & Schuster, Inc.*, in dicta, the Court referred to the definition of "express consent" in Black's Law Dictionary, without defining the term "consent;" the Dictionary definition for "express consent" appears under the definition of consent, and "express consent" is "consent that is clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). Black's Law Dictionary defines the word "consent" as "[a]greement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person; legally effective assent." Black's Law Dictionary (9th ed.).

capacity to consent or by a person empowered to consent for him, and (b) ***to the particular conduct, or to substantially the same conduct***." REST. (SECOND) OF TORTS § 892A(1), (2)(emphasis added). As the commentary to the Restatement explains, for consent to be effective, it "must be to the actor's conduct or to substantially the same conduct, rather than to the invasion that results from it." REST. (SECOND) OF TORTS § 892A, cmt. e (emphasis added). Giving a creditor your telephone number amounts to consent to be **called** by the creditor concerning the obligation; **calling** a different cell number than given is substantially the same conduct.

While Mr. Thornton complains here about calls made to his 4364 cell number, Thornton Dep., pp. 76, this amounts to substantially the same conduct that he consented to (calls to his 6134 number, on his NRLP account), and is likewise not actionable. REST. (SECOND) OF TORTS § 892A, cmt. e. It does not matter for purposes of 47 U.S.C. § 227(b)(1)(A)(iii) that he switched phone numbers; consent must be construed in accordance with the common law meaning of that term. *Id. Cf.*, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1149 (9th Cir. 2012).

**Second**, the statute's reference to the "called party" in the phrase "made with the prior express consent of the called party," makes clear that the consent relates to the consumer, not the number given in the course of the transaction. 47 U.S.C. § 227(b)(1)(A). As explained in *Soppet v. Enhanced Recovery Co., LLC*, consent follows the consumer to his new cell number:

> Consider another analogy. Borrower agrees with Bank, as a condition of a loan, that Bank can enter Borrower's garage and repossess his car if he does not keep current on payments. After signing this contract, Borrower sells his house, moves, does not tell Bank his new address, and defaults on the loan. Can Bank now enter the garage of the house where Borrower used to live and seize the car the repo men find there? Surely not.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

8

Borrower can consent to an entry on his own land and the use of his own car as collateral, but he can't consent to an entry on anyone else's land or the seizure of someone else's property. **Borrower's consent follows Borrower's change of address**: **Bank has permission to enter the garage where Borrower keeps his car at the time of entry**; Bank does not have consent to enter the garage of the new owner of Borrower's old house. Similarly, Customer could consent expressly to receive calls at his *current* Cell Number, even if that number changes, but simply providing Creditor with a number—which is how Customer consented here—does not authorize perpetual calls to that number after it has been reassigned to someone else.

*Id.,* 679 F.3d 637, 641 (7th Cir. 2012)(emphasis added). As in *Soppet*, Mr. Thornton's consent given to NRLP to call his cell number, follows his change in phone numbers.

**Third**, even if consent was somehow "automatically" terminated[12] when he ceased using the 6134 number, NCO did not have notice that Mr. Thornton no longer consented to be called on his cellular phone, and by virtue of the prior consent, NCO had a privilege to continue to reasonably act in accordance with

---

[12] Attempting to reach Mr. Thornton at the 6134 number, NCO determined that the number was no longer in service in 2007, but this fact does not support the inference that consent to be called was *ipso facto* terminated. Termination of consent results "when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." REST. (SECOND) OF TORTS § 892A(5), cmt. i. The particular conduct at issue is calling to discuss repayment of a debt. There are myriad reasons why a telephone number may no longer be in service, as in the case of Mr. Thornton, the reason for ending service at the 6134 number had nothing to do with a desire to not be called regarding his debts. Thornton Dep. p. 34. There was no reason for NCO to infer, let alone know, this was intended as an indication that Mr. Thornton was no longer willing to receive calls about his unpaid bill.   Even if it were construed as a termination of consent, the common law provided upon termination of consent, the actor was permitted to continue to act pursuant to the consent given, as the consent "may include, expressly or by implication, a privilege to continue to act." REST. (SECOND) OF TORTS § 892A(5).

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

9

the consent given. REST. (SECOND) OF TORTS § 892A, cmt. i. The privilege to call continued throughout the time NCO was calling, because it never received notice of termination of consent.

**Fourth**, Mr. Thornton's mother had the apparent authority to provide consent on his behalf to be called at the 4364 number. Under the common law of agency, an agent may hold authority to provide prior express consent. See *Osorio*, 746 F.3d 1242, 1253; *Gutierrez v. Barclays Grp*., 2011 WL 579238, *3 (S.D.Cal. Feb. 9, 2011). "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." REST. (THIRD) OF AGENCY § 2.03 (2006). "A principal's inaction creates apparent authority when it provides a basis for a third party reasonably to believe the principal intentionally acquiesces in the agent's representations or actions." *Id.*, § 2.03 cmt. b; *U.S. v. Great American Ins. Co.,* 738 F.3d 1320, 1334 (Fed Cir. 2013)("[s]ilence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence. Failure then to express dissent will be taken as a manifestation of affirmance.")(quoting REST. (THIRD) OF AGENCY, § 1.03, cmt. b); *Hawaiian Paradise Park Corp. v. Friendly Broad. Co*., 414 F.2d 750, 756-57 (9th Cir.1969); *Bus. Integration Servs., Inc. v. AT&T Corp.*, 251 F.R.D. 121, 128 (S.D.N.Y.2008).

While Mr. Thornton testified that he did not authorize his mother to release his number, he also testified that he never answered, responded or objected to any of the 132 calls made to him spanning three years and he did not direct his mother not to release his number. Thornton Dep., pp. 59-61. Whether silence in the face of 132 calls is a manifestation of consent, and whether his mother had

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

10

apparent authority to consent to the calls, are at best for Mr. Thornton, questions of fact are for the trier of fact to resolve *Osorio,* 746 F.3d at 1254; *Lamont v. Furniture North, LLC*, 2014 WL 1453750, *4 (D.N.H. 2014).

Critically, these facts set Mr. Thornton's claim apart from the class-wide concerns alleged to have caused injury to those who purportedly never consented to be called in the first place. Because Mr. Thornton consented to be called, he lacks standing to act as a class representative for either the Autodialer or Robocall Class.

### B.   Plaintiff's claims are not typical of the class and he is therefore not an adequate class representative

Under Rule 23(a)(3), a court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" ... "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d 970, 984 (9th Cir. 2011)( (internal references omitted). A named plaintiff does not satisfy the typicality or adequacy requirements if he is subject to unique defenses that threaten to become the focus of the litigation. *Id.* "[T]he Rule 23(a)(3) typicality inquiry overlaps with the Rule 23(a)(4) adequacy requirement because 'both look to the potential for conflicts in the class.'" *Labou v. Cellco Partnership*, No. 2:13–cv–00844–MCE–EFB, 2014 WL 824225, *3 (E.D.Cal. Mar. 3, 2014). *See also Ellis*, 657 F.3d at 985.

As set forth above, Thornton's claims are subject to consent defenses unique to him, both as a consequence of knowingly providing his cellular number

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

11

to NRLP as a consequence of his mother's apparent authority to provide his new cell number to NCO, and his acquiescence by silence to NCO's repeated calls. In contrast, the putative class claims allegedly relate to calls made without any indicia of consent.

Plaintiff's motion for class certification asserts that as to the putative classes, no individualized inquiry would be required and that "the limiting criteria included in the definitions of the proposed Classes permits the question to be answered" in a uniform manner. ECF No. 134-1, pp. 15-18. Such vague and baseless conclusory statements do not answer the defenses uniquely applicable to him or the class, and the defenses uniquely applicable to Thornton will not answer the question to be answered as to the putative classes. Consequently, his claims, which are subject to consent defenses, are not typical of the putative classes that he seeks to represent, and he is not an adequate representative of the classes. *Labou,* 2014 WL 824225, *4; *Ryan,* 2014 WL 1292930, *6-7.

### C.   The putative classes are not ascertainable

As an additional prerequisite to class certification, a plaintiff must establish ascertainability, which requires a showing of both a definition referencing objective criteria, and a showing "by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class." *Hayes v. Wal–Mart Stores, Inc.,* 725 F.3d 349, 356 (3d Cir.2013); *Algarin v. Maybelline, LLC,* 300 F.R.D. 444, 454 (S.D.Cal. 2014); *Connelly v. Hilton Grand Vacations Co., LLC,* 294 F.R.D. 574, 576 (S.D.Cal.2013); *Knutson v. Schwan's Home Service, Inc.,* 2013 WL 4774763, *5 (S.D.Cal. Sept. 5, 2013).

In determining ascertainability, the question is "whether the proposed class definition is definite enough to determine whether someone is a member of the class." *Knutson,* 2013 WL 4774763, at *5. "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

12

sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Id.* (citation omitted).

Here, Plaintiff has come up with neither a sensible and workable definition, nor identified a reliable methodology for identifying putative class members.[13] Suggesting the contrary, Plaintiff points to sample data drawn from NCO's account records of calls to debtors, hoping to identify putative class members through the work of Plaintiff's purported expert, Jeffrey Hansen, who prepared database scripts to cull through the data and identify calls to cellular numbers supposedly without prior express consent. ECF No. 135, ¶ 2; No. 137-2 ¶ 11.

Key to the proposed identification process by Plaintiff is the identification of calls on accounts where no consent could be shown, which Plaintiff feebly attempts to address by limiting the class to "Qualifying Cellular Telephone Number[s]" and concerning "Qualifying Debts." ECF No. 134-1, p. 12; 135-2 ¶¶ 2, 4-8; 137-2 ¶11. Plaintiff's proposal assumes that "the first number called in NCO's records is most likely to have been provided to NCO's client directly by the consumer" thereby constituting prior express consent, and the scripts were designed to identify numbers that were "not the first number called regarding any account." ECF No. 137-2 ¶¶ 11, 12. The scripts then perform a "series of steps designed to remove phone numbers for which there is any potential evidence of consent." *Id.* ¶ 13. Plaintiff's entire proposal for ascertaining the class is built upon a groundless assumption that NCO's creditor clients provide only one

---

[13] It is significant to note that Exhibit F to Mr. Hansen's report triples the number of calls for three accounts. Hansen Decl. Exhibit F lists 20 calls that were not included in the sample data provided by NCO. See Stevens Decl., ¶¶ 83, 86, 88 (regarding NCO account Nos. JV6383, JV6384, and JV6428).  See also NCO's motion to strike.

telephone number for a consumer – as assumption that is demonstrably false.  See Stevens Dep., pp. 77, 109 and 283; Stevens Decl., ¶ 81.

**First**, Plaintiff's model first eliminates calls to the first number, and in doing so, fails at step one. As in the case of Plaintiff Thornton, if a consumer provided a cellular number to a creditor and consented to be called at that number, and NCO subsequently called a cellular number to reach the very same consumer, there is no TCPA violation because consent attaches to the consumer, not the number. Per *Soppet*, consent follows the consumer to her new phone. Plaintiff Thornton's NCO account concerning NRLP (2C7E4B) was included in both putative classes, ECF No. 137-2, Exh. F & G, despite the fact that the first number called was also a cellular phone; despite the facts outlined above showing prior express consent to call. Other examples of calls initially made to cellular numbers followed by calls to other numbers appear in the putative classes. Stevens Decl., ¶ 91. Further, 22 of the 39 "likely" class accounts involved calls to numbers provided to NCO by its clients. Stevens Decl., ¶ 81. These numbers are just as likely as other subsequently called numbers to have potential evidence of consent. Indeed, records obtained from creditors contained within a sampling of the accounts as having cell phone calls, as well as concerning Plaintiffs, show that the consumers supplied the phone numbers in varying ways, and the creditor records contain the phone numbers NCO called. Slodov Decl., ¶¶ 6-26; Decl. Exh. A-R. Without examining the creditor's records on each account, it is impossible to ascertain whether the number NCO called was provided "to NCO's client directly by the consumer."

**Second**, Plaintiff's model next eliminates calls made before the class period. ECF No. 137-2 ¶ 12. But as in the case of Plaintiff Thornton, information related to calls predating the class period are relevant in assessing whether prior express consent existed to make subsequent calls. Likewise, calls to the first

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

14

number may have indications that suggest a consumer asked NCO to call on a cellular number.[14] Excluding earlier calls made on any given account from evaluation that were made before the class period would lead to an over inclusive class, and misses or ignores evidence of consent appearing in NCO's files.

**Third**, Plaintiff's model then excludes "type in" phone numbers that were "manually typed in by an NCO representative" so as "to exclude numbers potentially provided directly to NCO by consumer-debtors themselves." ECF No. 135, p. 3, ¶ 7. Yet the telephone number called on Mr. Thornton's account, ending 4364, was typed in, even though not denominated as such in NCO's account record, for the reason that "type in" was not systematically implemented as an identifier for such calls in 2008. Stevens Decl., ¶¶ 17, 51. Using Plaintiff's own "typed in" criteria would remove Plaintiff Thornton from these classes.

**Fourth**, the design does not reflect the fact that the data sample included only outgoing calls made by NCO, and did not reflect incoming calls, such as that made by Plaintiff Thornton's mother in May, 2008. Stevens Decl. ¶ 69. NCO's records memorialized that call as "MOM SAID TO TAKE OUT NUM AND GAVE NEW NUM." Stevens Decl., ¶ 52, Exh. A, p. 294, NCO002197. Nothing in the "Python script" is designed to identify such calls.

**Fifth**, the design for the script **assumes** that a second number called by NCO is likely to have not been placed by the client, and no evidence of consent exists. This assumption is untrue. Among the 39 putative class accounts identified by the script, NCO's records show that 22 of the 39 accounts involved calls to cell numbers that were in fact, placed by the client with NCO. Stevens

---

[14] Concrete references exist in the data to new numbers given during calls, as well as requests to call back. Stevens Decl., Exh. O, pp. 47("req a call back on mon to resolve the acct"), 61 ("vm gives d new numb"), 118 ("gave me new nmbr"), 377, 562. See also Slodov Decl. ¶ 36.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

15

Decl. ¶ 81. The design also does not account for co-debtor accounts, which may have two or more numbers associated with the account because more than one debtor provided a number at the time of completing a credit application. For a concrete example showing the assumption to be wrong, one of the accounts identified as a putative class account UQE946, reflecting a call to (859) 625-4309 on 11/11/11, shows that the second number called on the account was made to one of the two debtors, who supplied the 4309 number on the credit application at the time the account was opened. Stevens Decl. ¶ 91; Slodov Decl. ¶¶ 20-21. Thus, even if the scripts were used to narrow the possible class members, individualized account inquiries would still become necessary to determine whether the consumer supplied the number to the creditor at the time the account was opened. Thus, the script design is based on the fallacious logic that a second number NCO called could <u>not</u> have been provided to NCO by its client, and that no evidence of consent could exist with respect to a second number called.

**<u>Sixth</u>**, the design does not and cannot resolve difficult questions over who the called party was at the time of a given call. *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D.Cal.2014); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 109 (N.D.Ill.2013); *cf. Soppett*, 679 F.3d 637, 643. The association between a person and a telephone number is not categorically static, but often dynamic, changing over time, and the identification of historical authorized users or subscribers is difficult if not impossible. Sponsler Decl., pp. 5-15. Consider the case of Teyia Bolden, who claimed to be the exclusive user of the cell phone number 4281, for some time between January 2009 and either "until 2010" or "around 2011." Bolden 2d Supp. Resp. to Int. No. 3; Bolden Resp. to Int. Nos. 5, 7; Bolden Dep., pp. 49-64; 183-85; Stevens Decl. ¶¶ 15, 33-35. NCO made calls to the 4281 number between September 2010 and October 2011, in connection with three accounts, NCO account Nos. 2D6VFA, 3D4KZK and 2L0MYO.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

16

Stevens Decl. ´¶ 15, Table 1. The father of two of her children, Justin Wade, completed an account application identifying his home number as the 4281 cell number on August 2, 2010. *Id*., Exh. C, NCO 006684; Bolden dep., pp. 60-61. Yet Sprint's records showed the subscribers for the 4281 number in November of 2009 when the account was opened were Teyara Thomas and Justin Wade. Bolden Dep. pp. 120-23; Slodov Decl. ¶ 17, Exh. M, NCO 013696-97. Further, the bank's records show on April 11, 2011, it called the 4281 number and reached Plaintiff Bolden's daughter. Slodov Decl., Exh. F, NCO 014288. NCO's records do not show who received the calls, and as this is not an isolated occurrence. See Martinez Dep., pp. 18-19, 33-34, 38-41; Davidian Decl. ¶ 8, 10; Torrez Decl. ¶ 7; Monge Decl. ¶5. The proposed script would not resolve wrong party calls for numbers that are not excluded, and make the identification of class claims unmanageable. *Sponsler Decl. ¶¶ 9-22. See Smith v. Microsoft Corp*., 297 F.R.D. 464, 473; *Jamison*, 290 F.R.D. 92, 109; *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc*., 274 F.R.D. 229, 235-36 (S.D.Ill.2011).

**Seventh**, the script is over inclusive because it includes manually dialed calls made by human beings. ECF No. 135-4 ¶ 17. ZPX, X26, WQZ are individual employees, not "dialers." Stevens Decl., ¶¶ 69, 84; Exh. N, pp. 5, 9.

**Eighth**, the Plaintiff's rendition of what amounts to a "Qualifying Debt" is a gross oversimplification that relies on the absence of "categorical" evidence of consent, but does not reflect the reality that consent questions necessarily require an individualized inquiry based on the creditor's records. *Supra*, point 4. Consider the Wade-Bolden example above. Assuming for the sake of illustration that Plaintiff Bolden was the subscriber and user of the 4281 phone during the period of NCO's calls and that Plaintiff Bolden paid for minutes, the person who consented to be called as to NCO accounts 2L0MYO  and 3D4KZK was Justin Wade, not Teyia Bolden. By categorically excluding all TD Bank accounts, or by

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

17

categorically excluding all cell numbers called first, the script is under inclusive, omitting persons who received calls in error.

Further, the creditors carved out of the "qualifying debt" pool all had consent-to-call language in their terms and conditions. But NCO had over 900 clients, who likewise might have had consent-to-call language with respect to a given account. Stevens Decl. ¶ 62. For example, American Express FSB has more than ten (10) cardholder agreements posted to the CFPB online repository of credit card terms and conditions.[15] American Express' "AmeripriseGold" terms and conditions include consent-to-call language, along with a class action waiver and arbitration provision. Slodov Decl. ¶ 33, Exh. Y. Plaintiff Martinez had three American Express accounts, but they did not have consent to call language. *Id.*, ¶ 14, Exh. J, NCO 005008- 5031. Plaintiff's proposed "qualifying debt" exclusion makes no effort to even consider the presence of contractual consent, and cannot be answered categorically.

Plaintiff's qualitative in-or-out approach also ignores the fact that NCO used a form to capture prior express consent directly from a consumer on an account level. Stevens Decl. ¶ Exhibit B, NCO 14125-NCO 14126. It likewise ignores the fact that NCO captured consent by telephone directly from and while talking to the consumer. Stevens Decl. ¶ 47, Exhibit I.

The process of identifying which number was placed is performed manually on an account by account basis, reviewing the notes on each account, looking for the removal of a number from the home or work number fields, information on "F" screen entries, and in the absence of a phone number removal, by looking through source data. Stevens Decl., ¶¶ 17-21. This process

---

[15] http://www.consumerfinance.gov/credit-cards/agreements/. Such agreements are required to be kept by the government under 15 U.S.C. § 1632(d).

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

18

cannot be automated because the variables do not uniformly present accurate answers that can be culled from the data alone.  The scripts relied on by Plaintiff are not sophisticated enough or adept at assessing whether facts or circumstances are present as to amount to prior express consent. Instead, what is required is an individualized assessment of each account, the calls associated with the account and the creditor's records related to prior express consent, and the scripts do not present a reasonable substitute for manually reviewing the accounts. Stevens Decl. ¶¶ 16-19. For all these reasons, the classes are not ascertainable.

### D.   Plaintiff has not shown numerosity

Under Rule 23(a)(1), the court must determine whether the potential class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P, 23(a)(1).   In *Stemple v. QC Holdings, Inc*., this Court endorsed the view expressed in *Celano v. Marriott Int'l, Inc.,* 242 F.R.D. 544, 549 (N.D.Cal.2007), that where the putative class is comprised of less than 21 members, joinder is not impracticable, and numerosity is not satisfied. *Stemple,* 12–cv–01997–BAS(WVG), 2014 WL 4409817, *4 (S.D.Cal. Sept. 5, 2014).

Here, Plaintiff presents his analysis of NCO's sample data, reflecting collection activities on 2,845 accounts, arguing that "there are 39 likely members of the Autodialer Class, and 12 likely members of the Robocall Class." ECF No. 134-1, p. 20; No. 135 ¶ 14; 137-2 ¶ 30. Plaintiff's expert conceded that his analysis was **incomplete** because he did not assess whether any of the 39 likely autodialer class accounts related to a "qualifying debt," and did not reflect whether the numbers called were "qualifying cellular telephone number." ECF No. 137-2 ¶¶ 23.  Plaintiff's proposal fails to satisfy numerosity for two reasons.

**First**, applying Hansen's plan for exclusions of qualifying debts eliminates 26 of the 39 accounts, leaving but twelve other accounts (plus Thornton's). Stevens Decl. ¶ 79-83. One of these is improperly included because it involves

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

19

calls made by a human being only (JV6428), identified as WQZ, leaving eleven. Stevens Decl., ¶ 83. Of the eleven, a review of the placement data for these accounts shows that six of the eleven involved calls made to cellular telephone numbers that were placed by the creditor. Stevens Decl., ¶¶ 85-94. Applying Plaintiff's other qualifying cellular telephone exclusions eliminates three (3) of the five (5) remaining accounts. *Id.* at ¶¶ 97-105.Thus, what remains are a small handful of accounts requiring further research. No matter - it is clear that Plaintiff does not satisfy the threshold showing for numerosity. *Stemple*, s*upra*.

**Second**, Plaintiff also argues that these numbers support extrapolation to the larger cohort of 100 million NCO collection accounts, but this suggestion of thousands of others is supported by rote speculation alone, and is not based on a reasonable inference based on either the sample or the results of analysis, or on any expert statistical analysis. ECF No. 134-1, p. 20; No. 135 ¶ 16.

Plaintiff's invitation to extrapolate as a means to satisfy numerosity should be rejected. **First**, NCO's analysis of the data show that the number of phone calls made to cell numbers not placed by NCO's clients diminished over time. Stevens Decl., ¶¶ 51, 73. The reason for this is the result of systemic controls implemented by NCO during the class period. Stevens Dep., pp. 45-48, 190-91, 284; Stevens Decl. ¶¶ 51, 52-54. Thus, one cannot reasonably infer that the number of calls made to cell numbers in the absence of consent was constant during the class period; instead, the data suggest the number decreased. Stevens Decl. ¶ 73. **Second**, as shown above, the number of actual putative class accounts is substantially less than 39, and more likely less than five. **Third**, Plaintiff asks the Court to allow the case to proceed on a class basis based on their baseless inference that because their analysis identified additional accounts in the data set, by extrapolation, there must be thousands of others, since NCO had so many accounts. ECF No. 135 ¶ 16. But given that NCO employed ever more rigorous

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

20

measures as time went on to prevent making calls to cellular phones, there is no reason to believe that the methodology Plaintiff proposes to employ will identify more than a handful of random errors before the fall of 2011, and none after. Finally, as set forth below, trial by extrapolation is fundamentally unfair.

### E.    Plaintiff has not shown commonality.

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," or "commonality." Fed.R.Civ.P. 23(a)(2). "To satisfy commonality, there must be significant proof that the entire class suffered a common injury. ... The common injury must be connected to the specific claim for relief. ... In addition, as Plaintiffs propose certification under Rule 23(b)(3), the common questions must predominate over individual questions. ...[In short, Plaintiff must] establish[ ] significant proof that Defendant acted uniformly across the class and thus there is ... [a] common contention that is capable of classwide resolution." *Thomasson v. GC Servs. Ltd. P'ship*, 539 F. App'x 809, 810 (9th Cir. 2013).

Plaintiff Thornton argues here that there are four questions in common, namely, whether NCO's dialers satisfy the ATDS definition; whether NCO used an artificial or prerecorded voice; whether NCO can demonstrate consent and whether the classes suffered the same injuries. ECF No. 134-1, pp. 20-24. Thornton's suggestion fails for four reasons.

__First__, Plaintiff has not shown any significant proof that the putative classes suffered a common injury. Hansen admitted that the five dialer platforms used by NCO do not have the capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers. Hansen Dep. pp. 176-178. So the offered proof is not connected to the specific claim for relief.

__Second__, the data sample analysis performed by Plaintiff is seriously flawed and unremarkable in showing anything approximating a common injury, or the

identification of any valid TCPA claims. NCO has abundant evidence of having obtained prior express consent from a variety of sources, including creditor records and contracts, NCO's records, and directly from consumers during phone conversations. Stevens Decl. ¶¶ 28; Slodov Decl. ¶¶ 6-26. This cuts strongly against a finding of commonality. *Hicks v. Client Services, Inc.*, No. 07–61822, 2008 WL 5479111, *7-8 (S.D.Fla. Dec. 11, 2008). Further, the eight Plaintiffs were not all called using the same calling platforms, and some were called manually. Stevens Dep. pp. 137-38; Stevens Decl., ¶ 15, Table 1. The same holds true for the putative classes. Stevens Decl., ¶¶ 80-104.  Mr. Hansen's testimony established that his declaration's reference to "all the calls" was a gross over-generalization.  Hanson Dep. pp. 194-196.

**Third**, Plaintiffs have been unable to articulate the scope of their injuries to date, because they have no idea of how many calls they actually received. Thornton Dep., pp. 43-44, 129; Bolden Dep., pp. 28, 43-44, 65; Martinez Dep., p. 107; Bell Dep., pp. 104-105. As noted by Mr. Sponsler, the "regular authorized users of the mobile telephones that NCO attempted to call may not be reliably identified, as there is no publicly available means to determine historical authorized users or subscribers of mobile telephone numbers." Sponsler Decl. ¶ 9. Without the ability to reliably identify class members, there can be no proof of a common issue that predominates over individualized issues.

**Fourth**, what matters in assessing whether any of NCO's systems amounts to an ATDS is whether the system used to make a give call had the then "present capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers." *Marks*, 2014 WL 5422976, *1-3 (S.D.Cal. Oct. 23, 2014). Because each system is different, the calls were not all made by the same system, nor did all the calls use artificial or prerecorded voices, the claims share nothing in common. Stevens Decl., ¶¶ 15, Table 1; 80-104.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

22

## F. Plaintiff has not shown questions of law or fact common to class members predominate

The predominance inquiry requires a court to consider "'how a trial on the merits would be conducted if a class were certified. ... This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials.'" *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir.2008)(quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir.2003)). Class certification in TCPA cases is "warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary.... Thus, predominance in TCPA cases primarily turns on whether a class-based trial on the merits could actually be administered." *Connelly*, 294 F.R.D. at 577. Here, such a trial could not feasibly be administered.

**First**, based on the foregoing, individualized assessment of consent and the various forms it can take is necessary in this case, and a categorical solution for trying the case on a class basis has not been shown by Plaintiff.

**Second**, this case is not like *Stemple v. QC Holdings, Inc.*, where the defendant entered all phone numbers listed by a loan applicant in the Employer or Contact sections into its ATDS calling database. Rather, this case is much more like *Connelly*, where the Court found the varying ways in which consumers provided their phone numbers "suggests that the issue of consent should be evaluated individually, rather than on a classwide basis[,]" and that "the individualized issues in this suit are at least as important as the common issues and the predominance requirement is not satisfied." *Connelly*, at 577-78.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

23

As NCO has shown, consent was arrived at in varying ways, requiring individual evaluation. Thus, predominance has not been shown.

### G. **Plaintiff has not shown a class action is superior to individual suits for fairly and efficiently adjudicating the controversy**

Under the second criterion of Rule 23(b), this Court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b). *Cf. Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir.2010). A "nonexhaustive list of factors pertinent to a court's 'close look'" at the superiority requirement is found in the text itself. *Amchem*, 521 U.S. at 615–16.

A class action is not a superior means for fairly and efficiently adjudicating this controversy, and would be patently unfair to NCO. During the class period, NCO represented over 900 different creditors, had in excess of 100 million accounts placed for collection, and its call volume exceeded 15-20 million calls per month on average, yielding roughly between 720 million and 1.14 billion calls. Stevens Decl. ¶64-66. NCO has demonstrated prior express consent, or at a minimum, presented one or more triable questions of fact, as to each of the eight named Plaintiffs who were at one time or another, involved in this action. Stevens Decl., *passim*. "[T]here simply is no legal authority for the proposition that third party collectors must already be in possession of documents in order to use them for purposes of defending against a TCPA case. In fact, the FCC recognizes that '[t]he creditors are in the best position to have records kept in the usual course of business showing such consent.' *See* FCC Declaratory Ruling No. 07–232, 23 FCC Rcd. 559 ¶10." ECF No. 90. Because proof of consent does not categorically lie in NCO's hands, allowing data mining to substitute for available evidence on the issue of consent would deprive NCO of its defenses, and be patently unfair.

Ultimately, Plaintiff's sampling and data analysis approach to identifying putative class members who did not consent to be called at best offers efficiency "purchased at the cost of fairness." *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993). Aggregate proof through data and statistics is generally not permitted where affirmative defenses raise individualized questions required to be resolved by trial. 2 MCLAUGHLIN ON CLASS ACTIONS § 8:17 (8th ed.). "[N]umerous decisions have rejected attempts to utilize 'trial by statistics' in various kinds of class actions. These cases have repeatedly reaffirmed that statistics may not be used to deprive defendants of their constitutional and procedural rights to defend themselves on a case-by-case basis." 2 MCLAUGHLIN ON CLASS ACTIONS § 8:7. *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561. Plaintiff's aggregate proof approach to overcoming NCO's consent defense turns these precedents on their heads, by attempting to treat all possible sources for obtaining phone numbers the same way, to the prejudice of NCO.

As the evidence shows NCO's calling practices were compliant under the TCPA, making calls to cellular numbers using automated systems only where it had prior express consent or by manually dialing, so that a class adjudication would be inefficient, unfair and deprive NCO of the ability to prove consent on an account by account basis. As such, the superiority requirement has not been met.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff's motion for class certification ought to be denied.

Respectfully submitted,

Dated: March 9, 2015         SESSIONS FISHMAN, NATHAN & ISRAEL, L.L.C.

*/s/Michael D. Slodov*
Michael D. Slodov

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

25

Attorney for Defendant
NCO Financial Systems, Inc.

James K. Schultz
Sessions Fishman Nathan & Israel LLC
55 West Monroe Street
Suite 1120
Chicago, IL 60603
(312) 578-0990
Email: jschultz@sessions-law.biz

Bryan C. Shartle
Sessions Fishman Nathan and Israel LLC
3850 North Causeway Boulevard
Suite 200
Metairie, LA 70002-7227
(504) 828-3700
Fax: (504) 582-1523
Email: bshartle@sessions-law.biz

Debbie P Kirkpatrick
Damian P. Richard
Sessions Fishman Nathan & Israel, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA 92108
619-758-1891
Fax: 619-296-2013
Email: dpk@sessions-law.biz, drichard@sessions-law.biz

**PROOF OF SERVICE**

   **I HEREBY CERTIFY** that on March 9, 2015, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

By: /s/Michael D. Slodov
*Admitted pro hac vice*
Attorneys for NCO Financial Systems, Inc.

NCO Financial Systems, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification

27