1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   JEFFREY MOLNAR, *ET AL.*,               Case No.  13-cv-00131-BAS(JLB)
12                          Plaintiffs,      **ORDER:**
13              v.                               **(1) DENYING DEFENDANT'S**
                                                     **MOTION TO STAY (ECF**
14   NCO FINANCIAL SYSTEMS,                         **NO. 95); AND**
     INC.,
15                                               **(2) GRANTING**
                                                     **DEFENDANT'S MOTION**
16                          Defendant.               **TO SEAL (ECF NO. 114)**
17

18        Presently before the Court is a motion to stay proceedings filed by

19   Defendant NCO Financial Systems, Inc. ("NCO").  NCO requests a stay on the

20   basis that the Federal Communications Commission ("FCC") has primary

21   jurisdiction to decide the following issues: (1) whether equipment with merely the

22   *capacity* to function as a predictive dialer constitutes an Automatic Telephone

23   Dialing System ("ATDS") under the Telephone Consumer Protection Act, 47

24   U.S.C. § 227 ("TCPA"); and (2) whether a "good faith defense" protects callers

25   under the TCPA when a consenting consumer's number is reassigned to an non-

26   consenting third person.  For the following reasons, the Court **DENIES** NCO's

27   motion to stay.

28   ///

13cv131

## I.      BACKGROUND

On January 16, 2013, plaintiffs Jeffrey Molnar and Wesley Thornton commenced this putative class action against NCO, a debt collector, alleging a violation of the TCPA.  (ECF No. 1.)  On February 21, 2014, plaintiffs Jeffrey Molnar,[1] Wesley Thornton, Aileen Martinez, Chiquita Bell, Teyia Bolden, and Antoinette Stansberry (collectively "Plaintiffs") filed the operative consolidated class action complaint.   (ECF No. 66 ("Compl.").)   Plaintiffs allege NCO repeatedly—and without their permission—made phone calls and sent text messages to their cellular phones in violation of the TCPA.  (*Id.* at ¶¶ 2–3.)

The TCPA makes it illegal for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS][2] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]"   *See*  47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiffs seek to bring this suit on behalf of three injured classes: those called with ATDS systems (the "Auto-Dialer Class"); those called by a prerecorded voice (the "Robo-Call Class"); and those sent text messages (the "Text Message Class").  (Compl. at ¶ 65.)

According to Plaintiffs, NCO used "equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers" to contact the Auto-Dialer Class and the Text Message Class.  (*Id.* at ¶¶65, 73, 86.)  This equipment allegedly enabled NCO to call Plaintiffs without

---

[1]      Jeffrey Molnar was dismissed from this action with prejudice on March 2, 2015.  (ECF No. 143.)  On April 29, 2014, Plaintiffs' action was consolidated with *Monge v. NCO Financial Systems, Inc.*, No. 14-cv-00460 (S.D. Cal.).  (ECF No. 82.)

[2]      The TCPA defines an ATDS as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

"human intervention."  (*Id.* at ¶¶ 74, 86.)

On August 11, 2014, NCO filed the pending motion to stay.  (ECF No. 95 ("Mot.").)   NCO contends the case should be stayed awaiting the resolution of "multiple petitions" for declaratory ruling before the FCC.  (*Id.* at p. 3.)   These petitions request FCC clarification of whether TCPA liability exists for calling reassigned, previously consenting numbers, and whether "capacity" in 47 U.S.C. § 227(a)(1) includes equipment with only the "future ability" to function as an ATDS.  (*Id.* at pp. 3-5.) [3]

## II.   LEGAL STANDARD

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Primary jurisdiction is a "prudential" doctrine that permits a court to stay or dismiss a case if an "otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."  *Id.* (citing *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)).  "[I]t is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *Id.* (internal citations and quotation marks omitted).

---

[3]     *See Petition for Expedited Declaratory Ruling on Autodialer Issue of Milton H. Fried, Jr. & Richard Evans*, CG Docket No. 02-278 (May 27, 2014); *Petition for Expedited Declaratory Ruling & Clarification of TextMe, Inc.*, CG Docket No. 02-278 (Mar. 18, 2014); *Petition for Rulemaking of ACA International*, CG Docket No. 02-278 (Feb. 11, 2014); *Petition for Expedited Declaratory Ruling Filed by United Healthcare Services, Inc.*, CG Docket No. 02-278 (Jan. 16, 2014); *Petition for Rulemaking of ACA International*, CG Docket No. CG 02-278 (Jan. 31, 2014).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).  Ninth Circuit courts, however, weigh four factors in determining whether to apply the doctrine:

> (1) [whether] the issue is not "within the conventional experiences of judges," (2) [whether] the issue "involves technical or policy considerations within the agency's particular field of expertise," (3) [whether] the issue "is particularly within the agency's discretion," or (4) [whether] "there exists a substantial danger of inconsistent rulings.

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011) (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172-73 (9th Cir. 2002)).

## III.   DISCUSSION

In passing the TCPA, one of Congress' goals was to prohibit the use of ATDSs "to communicate with others by telephone in a manner that invades privacy."   *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied*, 133 S.Ct. 2361 (2013) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)).  The elements of a TCPA claim under 47 U.S.C. § 227(b)(1)(A) are: (1) the defendant called a cellular telephone number; (2) using an ATDS; (3) without the recipient's prior consent.  *Id.* at 1043.  A text message is a "call" within the TCPA.  *Satterfield*, 569 F.3d at 954.

NCO requests a stay of this putative class action asserting violations of the TCPA.  According to NCO, the TCPA is unclear as to whether "equipment that does not have the *present* ability or 'capacity' to store or produce numbers using a random or sequential number generator and to dial such numbers without human intervention" is an ATDS.  (Mot. at 9:22–25 (emphasis added).)  Similarly, NCO argues uncertainty exists as to whether "calls to 'reassigned' or 'wrong' numbers are subject to a good faith defense."  (*Id.* at 9:25–26.)  In support of its motion, NCO provides evidence that petitions regarding these two issues are currently

before the FCC.  (*Id.* at 3:11–5:22; *supra* note 3.)

### A.    **"Present" Capacity**

In response to NCO's motion, Plaintiffs point out that the issue of present versus future capacity has already been resolved by the Ninth Circuit and the FCC, making this issue inappropriate for the exercise of primary jurisdiction.  (ECF No. 107 ("Opp.") at 14:16–25.)  The Court agrees.

In examining the TCPA's ATDS provision, the Ninth Circuit has concluded that "the statutory text is clear and unambiguous."  *Satterfield*, 569 F.3d at 950–51. In *Satterfield*, the Ninth Circuit determined the statute's clear language focused on "whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'"  *Id.* at 951.  Therefore, the capacity of the system alone is enough—"a system need not *actually* store, produce, or call randomly or sequentially generated telephone numbers[.]"  *Id.* (emphasis added).

The Ninth Circuit again dealt with the "capacity" issue in *Meyer*.  The defendant in *Meyer* claimed that its dialers did not have the "present capacity to store or produce numbers using a random or sequential number generator."  *Meyer*, 707 F.3d at 1043.  However, the defendant did not dispute that it used predictive dialers[4] and that "its predictive dialers have the capacity described in the TCPA." *Id*.  Citing its decision in *Satterfield* and a prior FCC ruling determining that predictive dialers are ATDSs under the TCPA, the Ninth Circuit found the defendant's predictive dialing equipment fell "squarely within the FCC's definition of 'automatic dialing system.'"  *Id.*

---

[4]       "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091 (2003).

The FCC's determination that predictive dialing systems qualify as ATDSs turned on the definition of capacity. *See In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14091-92 (2003). The FCC noted that, despite changes in dialing technology, the "basic function" of prohibited systems "has not changed—the *capacity* to dial numbers without human intervention." *Id.*

Thus, circuit precedent has directly addressed the "present capacity" issue, illustrating that this matter does not require "resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency[.]" *Clark*, 523 F.3d at 1114 (quoting *Brown*, 277 F.3d at 1172). In light of this precedent, other district courts have refused to grant a stay under nearly identical circumstances to the present case.[5] In *Jordan v. Nationstar Mortg., LLC*, No. 14-cv-00787(WHO), 2014 WL 5359000 (N.D. Cal. Oct. 20, 2014), for example, the Northern District of California declined to grant a mortgage-loan servicer's request for a stay, pending FCC determination of the same "present capacity" issue. *Id.* at *1. That court noted that "[c]ourts in this circuit have ruled

---

[5]     *See, e.g., Harnish v. Frankly, Co.*, No. 5:14-cv-02321(EJD), 2015 WL 1064442, at *3-4 (N.D. Cal. Mar. 22, 2015) (denying motion to stay pending FCC clarification of "whether the equipment must have the capacity to randomly generate and dial telephone numbers at the time the call or text message is actually transmitted" because "this is not an issue of first impression[.]"); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267(YGR), 2015 WL 1223658 at *3 n.5., *4 (N.D. Cal. Mar. 17, 2015) (denying stay pending FCC resolution of whether two parties' combined use of equipment constituted an ATDS, because a stay would be indefinite and likely prejudice the plaintiff, and the relevance of the petition before the FCC was questionable); *Knapp-Ellis v. Stellar Recovery, Inc.*, No. 2:13-cv-01967(RSM), 2014 WL 5023632, at *2-3 (W.D. Wash. Oct. 8, 2014) (denying stay because interpretation of "capacity" is within "the conventional policy experience of judges," issue was not dispositive, and FCC ruling was not imminent); *McKenna v. Whisper Text*, No. 5:14-cv-00424(PSG), 2014 WL 4905629, at *4 (N.D. Cal. Sept. 29, 2014) (denying stay pending resolution of "present capacity" because it was unclear whether FCC would issue a ruling and it was unlikely the FCC would change its past definition of an ATDS).

1   on the meanings of the . . . terms at issue here consistently and without the need to
2   defer to the technical expertise of the FCC." *Id.*

3       The *Jordan* court surveyed both FCC orders and Ninth Circuit decisions
4   concerning the "present capacity" issue.  *See* 2014 WL 5359000, at *5–8 (noting
5   four pending FCC petitions in addition to ten district court cases addressing the
6   issue).  The court concluded that "application of the primary jurisdiction doctrine is
7   not warranted . . . [because] [t]he interpretation of 'capacity' is within the Ninth
8   Circuit's experience, does not involve technical expertise, and does not impose a
9   substantial danger of inconsistent rulings." *Id.* at *8.

10      As in *Jordan*, application of the primary jurisdiction doctrine here is not
11  warranted.  Although petitions are pending before the FCC, the issue is neither one
12  of first impression, nor one best left to the FCC's technical expertise.  Further, there
13  is nothing to suggest the FCC will imminently rule on this issue, and an open-ended
14  stay will likely cause delay and prejudice to Plaintiffs' case.  *See Nat'l Commc'ns
15  Ass'n v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 225 (2d Cir. 1995) (noting that agency
16  determination is typically protracted, resulting in costly delay to parties awaiting
17  administrative resolution of an issue).  Ample authority exists for this Court to rule
18  on the ATDS issue without needing to defer to the FCC.

19      The potential immateriality of the present capacity issue further weighs
20  against granting a stay.  Even if dialers with the "present capacity" to function as an
21  ATDS were statutorily distinct from those with the "future capacity" to function as
22  such, it is not yet clear from the evidence presented in support of and in opposition
23  to NCO's motion how such a distinction would affect the outcome of this case.
24  Plaintiffs provide evidence suggesting that all of NCO's dialers had "present
25  capacity," making resolution of the issue immaterial.  (Opp. at 9-11.)  For example,
26  it appears NCO used a LiveVox system, which other courts have determined has the
27  present capacity to function as an ATDS.[6]  *See e.g., Echevvaria v. Diversified*

28  _____

[6]  Plaintiffs contend NCO used four dialers with similar functions to call

– 7 –

13cv131

*Consultants, Inc.*, No. 13-cv-4980, 2014 WL 929275, at *5–7 (S.D.N.Y. Feb. 28, 2014) (finding the LiveVox system to have the present capacity to be an ATDS); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225-26 (D. Mass. 2014) (finding that LiveVox has the present capacity to store telephone numbers and relying on witness testimony that LiveVox has the present capacity for random or sequential number generation).  Without deciding the issue at this stage, it appears the other dialers used by NCO have similar features.  (Opp. at 9-11.)

As noted, the Court's interest in expeditiously resolving this case weighs against a stay pending resolution by the FCC that is both uncertain and may not even address an issue material to this case.  Therefore, the Court declines to stay the case pending the possibility of an FCC determination favorable to NCO at some point in the future.

**B.   "Good Faith Exception"**

NCO also requests a stay pending FCC resolution of whether a "good faith exception" insulates telemarketers from liability for calling or texting third-party subscribers, rather than intended recipients.[7]  Plaintiffs argue that "it is well-settled that the consent required under the TCPA cannot come from an 'intended recipient' of a call.  Rather, the 'current subscriber' to the telephone number must [consent.]" (Opp. at 14:26–15:12.)   As set forth below, the Court agrees that potential FCC resolution of this issue at some point in the future does not necessitate staying the case.

---

Plaintiffs: LiveVox, Aspect, CRS Mercury Predictive Dialer, and Guaranteed Contacts. (Opp. at 9-11.)

[7]        NCO proffered evidence in its Reply that the existence of a good faith exception would be material to one named plaintiff and at least some of the putative class.  (*See* Reply at 7:7–8:17 (alleging calls and text messages sent to Plaintiff Bolden were intended for a nonparty); Stevens Declaration at ¶¶ 5–6 ("Several of the accounts involve calls made . . . to a [number provided as a plaintiff's home number] . . . which . . . was no longer used by the [p]laintiff[,]" or which "may have been reassigned and allegedly used by one of the Plaintiffs as a cellular telephone at the time of the calls[.]").)

In interpreting the "clear and unambiguous language" of the TCPA, district courts in the Ninth Circuit have repeatedly declined to insulate telemarketers from liability for calling reassigned numbers.  *See, e.g.*, *Jordan*, 2014 WL 5359000, at *10 ("The Ninth Circuit has not directly addressed what the specific definition of 'called party' is under section 227(b)(1)(A), but district courts in this circuit have generally rejected the 'intended recipient' definition."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1224 (S.D. Cal. 2014) (rejecting the argument that "called party" means "intended recipient" on the basis of twenty factually similar cases and public policy); *Gutierrez v. Barclays Grp.*, No. 10-cv-1012-DMS(BGS), 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011) ("[T]he Court is persuaded . . . that the TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for violations of the TCPA."); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F. 3d 637, 643 (7th Cir. 2012) (concluding that "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made."); *Osorio v. State Farm Bank*, F.S.B., No. 13cv10951, 2014 WL 1258023, at *7 (11th Cir. 2014) (rejecting the argument that the "intended recipient" is the "called party" referred to in § 227(b)(1)(A)).  With multiple courts having determined that the interpretation of consent is within their expertise and declining to recognize an exception, there is little risk of inconsistent adjudications.

Other district courts in the Ninth Circuit have also consistently denied stays pending FCC resolution of whether a "good faith exception" exists under the TCPA.[8]  The lack of stays is unsurprising, given there is no indication the FCC will make a decision regarding pending petitions for a "good faith exception" any time soon.  *See Heinrichs v. Wells Fargo Bank*, No. 13-cv-05434(WHA) (N.D. Cal.) at ECF No. 62 (Order Lifting Stay & Setting Case Management Conference, issued

---

[8]     *See, e.g.*, *Jordan*, 2014 WL 5359000, at *10–12; *Knapp-Ellis*, 2014 WL 5023632, at *3 (denying stay because interpretation of "consent" is within "conventional policy experience of judges," issue was not dispositive, and FCC ruling was not imminent).

1    Oct. 16, 2014) (lifting stay on the basis of an FCC statement that the agency is "not
2    in a position to predict when [it] will vote to approve a final order on those [good
3    faith exception] petitions.").

4         In *Jordan*, the district court considered the mortgage-loan servicer's
5    argument that FCC resolution of "whether a caller is liable under the TCPA for
6    calling an 'unintended recipient'" warranted a stay. *Jordan*, 2014 WL 5359000, at
7    *10. The servicer asserted that it "intended to call its customers, but unintentionally
8    called [the plaintiffs]." *Id.* (internal citation omitted). The district court
9    nevertheless declined to grant a stay, citing generally consistent rulings in
10    California district courts and by the Seventh and Eleventh Circuits that no good
11    faith exception exists. *Id.* (citations omitted). The court's ruling on the good faith
12    issue rested on the "unnecessary delay to resolution of this litigatio[n]" that
13    "awaiting the possibility of an FCC ruling" would create. *Id.* at *12.

14         The Court is not persuaded that FCC consideration of the issue warrants a
15    stay. As *Jordan* states, Ninth Circuit courts have routinely ruled on this issue of
16    statutory interpretation, indicating it is well within the conventional experience of
17    judges. *See Pimental v. Google, Inc.*, No. C-11-02585(YGR), 2012 WL 1458179,
18    at *3 (N.D. Cal. Apr. 26, 2012) ("Interpretation of these [TCPA] statutory terms
19    do[es] not require the FCC's policy expertise or specialized knowledge" and has not
20    been "explicitly delegated" to the FCC by Congress.). Finally, NCO does not offer
21    sufficient evidence that the FCC will imminently rule on the issue, weighing against
22    there being a substantial danger of inconsistent rulings.

23         NCO relies on a case from this district, *Gusman v. Comcast Corp.*, No. 13-
24    cv-1049(GPC), 2014 WL 2115472 (S.D. Cal. May 21, 2014) to show that the Court
25    should grant its motion. In *Gusman*, the named plaintiff sued Comcast, alleging
26    Comcast had called his cellular telephone number without obtaining his prior
27    express consent. *Id.* at *1. Comcast argued that it had the consent of the number's
28    prior owner and requested a stay on the basis of FCC consideration of whether calls

to reassigned or wrong numbers violated the TCPA.  *Id.*

The court stayed the case, premised on its holding that the FCC has not addressed the specific issue of whether prior express consent exists for "recycled or reassigned cellular telephone numbers."  *Id.* at *3.  The court justified its holding on the basis that "the public comment periods [on the petitions] have passed and . . . there is an indication by an FCC Commissioner that this is an issue of importance where guidance is needed and that the FCC should work on resolving this issue without delay."  *Id.* at *4.  Further, the court noted the plaintiff would not be prejudiced, in part because the case was "in the early stages of litigation."  *Id.*

The facts before the Court do not mandate the same outcome as *Gusman*.  In the nearly fourteen months since the later of the two petitions concerning the consent issue was filed with the FCC, the agency has given no indication that imminent clarification is forthcoming.  *See Heinrichs*, No. 13-cv-05434(WHA) (N.D. Cal.), at ECF No. 62.  Further, unlike *Gusman*, this case has advanced past the early stages of litigation.  Given that the Court is not persuaded that interpretation of whether a good faith exception exists requires the FCC's expertise, and there is no imminent likelihood of agency clarification, the Court declines to grant NCO's motion to stay.

### C.    Motion to Seal

NCO filed a motion for leave to file three exhibits under seal in support of its reply brief.  (ECF No. 114.)  The exhibits were designated "Confidential" by Plaintiff pursuant to the Protective Order entered in this case (ECF No. 53).  (*Id.* at Exh. A.)  The exhibits are records produced by TD Bank, NA, American Express, and New River Light and Power and contain contact information for both plaintiffs and non-parties.  (*Id.* at ¶ 2(a)-(c).)  NCO disputes the "Confidential" designation.  (*Id.* at ¶ 2(g).)  For purposes of the present motion only, which is a non-dispositive motion, the Court finds good cause to seal the three exhibits.  *See In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir.

1  2012) (applying the good cause standard under Fed. R. Civ. P. 26(c) to non-
2  dispositive motions).  Accordingly, NCO's motion to seal is **GRANTED**.

3  **IV.   CONCLUSION**

4        For the reasons stated herein, the Court **DENIES** NCO's motion to stay
5  (ECF No. 95) and **GRANTS** NCO's motion to seal (ECF No. 114) the documents
6  lodged with the Court at ECF No. 115.

7        **IT IS SO ORDERED.**

8

9  **DATED:  April 20, 2015**

10                                                    Hon. Cynthia Bashant
                                                     **United States District Judge**

– 12 –

13cv131